**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:23-cv-00007-JLK-MEH

**CONSTANCE KNIGHT AND ROGER KNIGHT**

Plaintiffs,

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY**

Defendant.

---

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

Defendant State Farm Mutual Automobile Insurance Company (hereafter "State Farm"), by and through its attorneys, SGR LLC, submits the following Motion for Summary Judgment, pursuant to Fed.R.Civ.P. 56.

*Certificate of Conferral with D.C.COLO.LCivR 7.1(a)*: The parties conferred and this Motion is opposed.

# I. Statement of Undisputed Material Facts

1. Plaintiff Constance Knight ("Ms. Knight") was rear ended by Miranda Lewin on December 8, 2018 and sustained injuries and damages stemming from this collision. (Dkt. 22, p. 5: Scheduling Order, § 4, Undisputed Facts, ¶ 1).
2. The accident was caused in part by Miranda Lewin. (*Id*. ¶ 2).

3. Ms. Lewin lost control after hitting a one foot deep "washout" on the road. (*Id.* ¶ 3)

4. Ms. Knight recovered liability policy limits of $25,000.00 from Ms. Lewin's carrier, Sentry Insurance. (*Id.* ¶ 4).

5. Ms. Knight then sought UIM benefits from her own carrier, State Farm, whose policy provides coverage up to $250,000.00. (*Id.* ¶ 6).

6. Ms. Knight sued the Colorado Department of Transportation ("CDOT") alleging CDOT's actions or inactions [with respect to the washout] caused or contributed to the accident. (*Id.* ¶ 6).

7. State Farm's Policy of insurance endorsement contains the following provision:

> Other Duties Under Medical Payments
> Coverage, Uninsured Motor Vehicle Coverage,
> Uninsured Motor Vehicle Property
> Damage Coverage, Death, Dismemberment
> and Loss of Sight Coverage, and
> Loss of Earnings Coverage
> a. Item 7.a.(3) is changed to read:
> A person making claim under:
> a. … Uninsured Motor Vehicle Coverage,…or
> Loss of Earnings Coverage must:
> (3) provide written authorization:
> (a) for us to obtain:
> (i) medical bills;
> (ii) medical records;
> (iii) wage information;
> (iv) salary information;
> (v) employment information;
> (vi) and any other information we deem necessary to substantiate the claim; and
> (b) that does not in any way:
> (i) restrict us from performing
> our business functions in obtaining records, information, and data;
> (ii) limit our ability to use or retain records, information, and data collected or received by us;
> (iii) require us to violate any federal or state law or regulation;
> (iv) prevent us from meeting our data reporting and data retention obligations to

insurance regulators; or
(v) prevent us from disclosing claim related information and data:
1) to perform our business functions;
2) to meet our reporting obligations to insurance regulators;
3) to meet our reporting obligations to insurance data consolidators; and
4) as otherwise permitted by law.

**(Exhibit A).**

8. Ms. Knight filed a UIM claim with State Farm which requested an Authorization for Release of Information ("ARI") and a Medical Provider Summary ("MPS") on May 8, 2020, (**Exhibit B**[1], 2/2/24 Arguello report, p. 11).

9. State Farm also sent requests for information about Dr. Knight's UIM claim on September 30, 2020, November 23, 2020, May 12, 2020. (*Id*., p. 12, 13-14).

10. On December 9, 2020, plaintiff sent a demand to the tortfeasor's carrier, but not to State Farm. (*Id*., p. 13).

11. Plaintiff counsel did not send medical bills or records allegedly caused by the December 8, 2018 accident to State Farm until November 30, 2021 (an executed ARI and MPS were **not** provided). (*Id*. at p. 14).

12. On December 8, 2021, State Farm advised that based upon the information provided to date, State Farm considered $13,616.42 in medical expenses to have been incurred due to the accident, and that in light of the $25,000 liability offset, State Farm was offering

[1] Defendant did see the Court's Practice Standard requesting only one copy of an exhibit be filed if attached to multiple pleadings, but due to the fact that the highlighting is different in this copy, defendant attaches a duplicate copy of this exhibit that was also attached to Dkt. 54, which will hopefully aid in the Court's efficient review.

$8,616.42 to settle plaintiff's disputed UIM claim. *Id*. at p. 17.

13. In the December 8, 2021 letter, State Farm explained it had concerns about whether all of the treatment Dr. Knight was claiming was made necessary by the accident, and State Farm again requested medical records, an ARI and MPS, and State Farm anticipated an Independent Medical Examination ("IME") or records review (also known as a "utilization review", "UR") would be needed. *Id*. at p. 17.
14. February 3, 2022, State Farm followed up again with a request for records, this time citing the Policy language that required plaintiff to cooperate with State Farm's investigation. *Id.* at p. 18.
15. Some prior medical records were provided with the demand of March 29, 2022, which was acknowledged in State Farm's file on April 20, 2022. *Id*. at p. 22.
16. On April 29, 2022, State Farm again asked for medical records, an MPS, and again indicated an IME or UR might be needed. *Id*. at p. 22, 23.
17. On May 13 and 31, June 21, and July 11, 2022, counsel for State Farm again asked that plaintiff provide an ARI and MPS. *Id*. at p. 23.
18. July 28, 2022, State Farm's counsel sent a letter compliant with § 10-1-1118, C.R.S. (**Exhibit C**).
19. July 28, 2022, plaintiff provided an ARI and an MPS, which identified four providers: Dr. Thomas Cain, Dr. Megan Burke, Centura Physical Therapy, and Select Physical Therapy. (**Exhibit D**).
20. December 6, 2022, plaintiff represented that the "complete universe" of records "to date" had been provided to State Farm. (**Exhibit B**, Arguello 2/2/24 Report, p. 29).

21. Suit was filed December 9, 2022. (Dkt. 5).
22. On February 2, 20**24**, plaintiffs disclosed as expert Mr. Roger Knight (plaintiff, and husband of plaintiff Dr. Knight) and Mr. Elmo Brown. (**Exhibit E**).
23. In his report, Mr. Elmo Brown, a geologist, opined plaintiff Dr. Knight, a geologist, had "a viable prospect" with respect to "lease holdings" that Dr. Knight allegedly owned. (Hereinafter "Mineral Leases"). (See **Exhibit E**, Plaintiff Expert Disclosure Pleading, 2nd page of .pdf; and **Exhibit F**, Brown Report, p. 1).
24. Plaintiff, and designated plaintiff expert, Roger Knight, opined Dr. Knight's losses associated with the Mineral Leases were between **$1.4mm and $426mm**. (See **Exhibit E**, Plaintiff Expert Disclosure Pleading, 2nd page of .pdf; and **Exhibit G**, Roger Knight Report).
25. Neither Mr. Brown nor Mr. Knight disclosed with their reports any evidence to support the position that Dr. Knight actually owned Mineral Leases on the date of loss.
26. To timely rebut the opinions of Mr. Brown and Mr. Knight, State Farm had to retain Paul DeBoer, an forensic accounting expert, and Lance Galvin, a Retired Petroleum Engineer. (**Exhibit H,** defendant Supplemental Expert Disclosures).
27. Through today's conferral with plaintiff counsel, no evidence has **ever** been disclosed to support Dr. Knight's claim that she owned the subject Mineral Leases on the date of loss.
28. During litigation, defendant was able to obtain executed ARIs from Dr. Knight and eventually obtained records from providers plaintiff never disclosed prior to filing suit, including, for example, Senior Health Center West, which printed records in response to defendant's record request June 23, 2023. See, for example, **Exhibit I.**

## II. Standard of Review

Summary judgment is proper when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Churchey v. Adolph Coors Co.*, 759 P.2d 1336, 1339-40 (Colo. 1988). A dispute is "genuine" if the issue could be resolved in favor of either party. *Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986); *Farthing v. City of Shawnee*, 39 F.3d 1131, 1135 (10th Cir. 1994). A fact is "material" if it might reasonably affect the outcome of the case. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Farthing*, 39 F.3d at 1134. A party who does not have the burden of proof at trial must show the absence of a genuine factual dispute. *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994), *cert. denied*, 115 S. Ct. 1315 (1995). Once the motion has been properly supported, the burden shifts to the nonmovant to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper. *Concrete Works*, 36 F.3d at 1518. All the evidence must be viewed in the light most favorable to the party opposing the motion. *Simms v. Oklahoma ex rel. Dep't of Mental Health and Substance Abuse Services*, 165 F.3d 1321, 1326 (10th Cir.), *cert. denied*, 120 S. Ct. 53 (1999).

Summary judgment is unwarranted unless the court is convinced from the proof that the jury could arrive at but one conclusion. *Lopez v. Denver & Rio Grande W. R.R. Co*., 277 F.2d 830, 832 (10th Cir. 1960). Where the record taken as a whole could not lead a rational trier of

fact to find for the non-moving party, there is no 'genuine issue for trial.' *Yale Condos. Homeowner's Assoc., Inc. v. Am. Family Mut. Ins.*, 2021 WL 1222518, at *3 (D. Colo. April 1, 2021). Where reasonable minds cannot disagree, the court can resolve matters on Motion. *Vikman v. Int'l Broth. of Elec. Workers, Local Union No. 1269*, 889 P.2d 646, 654 (Colo. 1995). "Except in the clearest of cases where the facts are undisputed and reasonable minds can draw but one conclusion, relative degrees of fault are to be determined by a trier of fact." *Devenyns v. Hartig*, 983 P.2d 63, 70 (Colo. App. 1998) (*citing Gordon v. Benson*, 925 P.2d 775 (Colo. 1996)).

## III. Argument

### A. Plaintiffs failed to cooperate and failed to comply with conditions precedent to recovery, barring their claims

The right to recovery under an insurance policy may be forfeited when, in violation of a policy provision, the insured fails to cooperate with the insurer in a substantial and material respect and this failure to cooperate causes a substantial disadvantage to the insurer. *See, Allstate v. Allstate*, 22 P.3d 576, 579 (Colo. App. 2001); *State Farm Mut. Auto. Ins. Co. v. Secrist*, 33 P.3d 1272 (Colo. App. 2001). The Colorado Supreme Court has described the contractual duties of the insured in a first party case, such as the present one. *State Farm Mut. Auto. Ins. Co. v. Brekke*, 105 P.3d 177 (Colo. 2004). This analysis is particularly useful here. Specifically, the *Brekke* Court stated:

> Thus, in surveying the reciprocal duties of the two parties, the insurance provider's duty to its insured to investigate the accident is balanced by the insured's contractual duty to provide information and cooperation to the insurance provider about the accident. If both parties fulfill their reciprocal duties, virtually all relevant facts and issues likely to arise in the tort

> litigation will be known by both the insurance provider and its insured long before any suit is filed.

*Id*. at 189 (internal footnotes omitted).

Furthermore, Colorado insurance law and regulations provide a duty to disclose accurate and relevant information relating to an insurance claim. Even without a request, such information must be revealed. Colorado Division of Insurance Regulation 6-5-1 includes the following relevant definitions with respect to fraudulent insurance practices:

> 2. "Concealment" means the knowing concealment of a material fact by impeding the discovery of the material fact, by misrepresentation or by willful omission.
>
> 7. "Material fact." A fact is material if a reasonable person under the circumstances would attach importance to it in making a decision or determining a course of action, including but not limited to the issuance of a policy, the payment or acceptance of premiums, the submission of a claim, the scope or direction of an investigation, whether a claim should be paid or not, or the amount to be paid on a claim or benefit to any party.

Under the Colorado Insurance Fraud statute, there is a duty to disclose relevant information, including "material relating to the investigation of the loss, including … any proof of such loss." § 10-4-1003, C.R.S.. Colorado regulations and bulletins mandate what should be reported.

State Farm was not provided with relevant information by the Knight plaintiffs either before this suit was filed or after. This is true despite the fact that in this suit plaintiffs alleged State Farm was engaging in bad faith and unreasonable statutory delay and denial. Plaintiffs, through their counsel, repeatedly refused to provide relevant information that would allow State Farm to properly and timely evaluate their claim including medical records releases and medical provider information. This accident occurred in December,

20**18**, but plaintiffs' counsel first provided an executed Authorization for Release of information only three and a half years later, July 28, 20**22**, just months prior to filing suit. When the Authorization was finally provided, an incomplete medical provider sheet was given to State Farm. As a result, State Farm did not actually get some of the medical records until well after suit was filed, in mid 20**23**. This is true even though plaintiff claimed the "universe" of records **had** been provided to State Farm prior to suit.

More critically with respect to the claim that Dr. Knight sustained millions of dollars in lost earnings, **Dr. Knight has *never* provided proof that she owns the Mineral Lease upon which a massive loss of earning claim depends**. All of this has caused substantial prejudice to State Farm, due to the delays caused by plaintiffs' failures to cooperate and failures to comply with conditions precedent to recovery, and due to the fact that defendant had to retain experts to defend against the massive loss of earnings claim that now appears to be without the lynchpin evidence: ownership of the alleged Mineral Leases on the date of loss.

Courts in this District have found that this kind of failure warranted judgment in favor of defendants on grounds of failure to cooperate or failure of plaintiffs' to comply with conditions precedent to recovery under their contracts for insurance. *Hall v. Allstate Fire & Cas. Ins. Co.*, 20 F.4th 1319, 1325 (10th Cir. 2021) ("providing the requested information during litigation does not cure the source of prejudice because a defendant has already been forced to retain counsel and face extra-contractual damages."); *Pitcher v. Auto-Owners Ins. Co.*, 21-CV-00697-MEH, 2022 WL 1135710 (D. Colo. Apr. 18, 2022); *Ayala*

*v. State Farm Mut. Auto. Ins. Co.*, 20-CV-03573-PAB-NRN, 2022 WL 4299952 (D. Colo. Sept. 16, 2022); and *Nofsinger v. Allstate Fire & Cas. Ins. Co*., 120CV01631CNSSTV, 2022 WL 4536232 (D. Colo. Sept. 28, 2022).

Defendant is aware that the Court of Appeals (in a decision not binding on this Court) held that it was improper in these cases cited above for the Court to fail to address § 10-1-1118, C.R.S. *Wenzell v. United Servs. Auto. Ass'n*, 2024 COA 40, ¶ 36. In this case, State Farm did send a letter pursuant to § 10-1-1118 on July 28, 2022. Plaintiff counsel responded that very day, sending an ARI and MPS. However, **the MPS provided was not complete**, a fact that State Farm was not aware of until additional records were obtained for the first time after suit was filed. It cannot be the case that a defendant will lose the availability of a contractual defense because it does not send a letter demanding information that it does not know exists.

Moreover, plaintiff in this case endorsed the expert reports of plaintiff Roger Knight and Mr. Elmo Brown during litigation on February 4, 2024. Defendant did confer with plaintiffs about missing evidence to support the opinions of those experts, and plaintiffs indicated additional records would be provided. See Dkt. 38, ¶ 6 and 7. However, defendants could not have given plaintiffs the required 120 day "cure" period under § 10-1-1118, C.R.S. and still have met defendants' extended expert disclosure deadline set by the Scheduling Order as modified by Dkt. 40, of April 4, 2024. Thus defendant was forced to incur the expenses of retaining experts in

the areas of geology and accounting in order to meet its own expert deadlines. This was prejudicial to defendant who was forced to incur substantial expert fees and expenses to defend a claim which **to this day fails** because plaintiffs never disclosed evidence that Dr. Knight ever owned the "Mineral Leases" upon which her claim for millions of dollars in future lost earnings is based.

## B. In the Alternative, Plaintiff's Second and Third Claims for Relief Fail as a Matter of Law

At the outset, defendant wishes to acknowledge and address the fact that the issues addressed herein are closely related to the positions taken in the 702 Motion being filed contemporaneously herewith. (See, for example, Dkt. 54). The undersigned is trying to avoid duplication where possible but believes compliance with applicable Rules and Orders do require Motions that will unfortunately contain a degree of duplication.

Plaintiffs' Complaint contains Second and Third Claims Relief, for common law bad faith and statutory unreasonable delay or denial, respectively. (Dkt. 5, p. 12 and 14). Both claims (hereinafter collectively referred to as "extra contractual claims") are, pursuant to the conferral communication with plaintiff counsel prior to the filing of this Motion, based on theories which are either factually or legally unsupported: 1) that State Farm "failed to investigate"; and/or 2) that State Farm did not "effectuate a prompt settlement of the claim though it was 'reasonably clear'" damages were owed.

1. The "Failure to Investigate" Theory is Factually Unsupporteds

State Farm does not dispute that carriers generally have a duty to investigate. However, a "failure to investigate" claim cannot be a not viable basis for common law bad faith or statutory unreasonable delay claims when plaintiff identifies no facts that a carrier should have discovered, but did not. *Zarevo v. State Farm Mut. Auto. Ins. Co*., 22-CV-00117-RMR-NYW, 2022 WL 1061910, at *6 (D. Colo. Apr. 8, 2022) ("while Plaintiff avers that State Farm disregarded the observations or opinions of Plaintiff's treating providers, Plaintiff does not identify such purportedly disregarded opinions or allege that State Farm was even presented with such observations or opinions."). In *Vansky v. State Farm Automobile Insurance Company*, plaintiff argued defendant's investigation was inadequate, but did not say what a "further investigation could or would have uncovered." *Vansky v. State Farm Auto. Ins. Co.*, 20-CV-01062-PAB-NRN, 2022 WL 900160, at *7 (D. Colo. Mar. 28, 2022). Here, because plaintiff cannot point to any fact that State Farm should have, but did not uncover before suit was filed, the "failure to investigate" theory is not a viable basis for extra contractual claims.

2. Plaintiff's Common Law Bad Faith Claim Fails as a Matter of Law

To prevail on a common law bad faith claim, the Knight plaintiffs have had to allege and present this court with admissible evidence that: "1) the insurer acted unreasonably under the circumstances, and 2) the insurer either knowingly or recklessly disregarded the validity of the insured's claim." *Sanderson v. Am. Family Mut. Ins. Co.*, 251 P.3d 1213, 1217 (Colo. App. 2010); *Schultz v. Geico Cas. Co*., 429 P.3d 844, 846 (Colo. 2018). Stated differently: plaintiffs must allege and prove not only that State Farm's conduct was unreasonable, but also that State Farm knew or recklessly disregarded the fact that its conduct was unreasonable. *Ramos v. State*

*Farm Mut. Ins. Co*., 2020 WL 6134901, No. 19-CV-01634-KMT (D. Colo. October 20, 2020). If a reasonable person would find the carrier's position was "fairly debatable," that is some evidence that the carrier acted reasonably with respect to adjusting the claim, but does not end the inquiry. A common law bad faith claim "requires proof of unreasonable conduct, and knowledge that such conduct is unreasonable or a reckless disregard of the fact that the conduct is unreasonable at the time the decision was made." *Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1276 (Colo. 1985).

Ordinarily, what constitutes reasonableness under the circumstances is a question of fact for the jury. *Bankr. Estate of Morris*, 192 P.3d at 524. However, in appropriate circumstances, "as when there are no genuine issues of material fact, reasonableness may be decided as a matter of law." *Zolman v. Pinnacol Assurance*., 261 P.3d 490, 497(Colo. App. 2011) (citing *Bankr. Estate of Morris*, 192 P.3d at 524). Under Colorado law an insurer "will be found to have acted in bad faith only if it has intentionally denied (or failed to process or pay) a claim without a reasonable basis." *Brandon v. Sterling Colorado Beef Co.*, 827 P.2d 559, 561 (Colo. App. 1991).

While plaintiff may not have agreed with State Farm's initial settlement pre suit, there is no evidence that State Farm did or failed to do anything other than act reasonably as any other insurer would have, given the facts as they developed in this case. There is no evidence that State Farm's conduct was objectively unreasonable or inconsistent with what other carriers would have done, much less that it knew or recklessly disregarded that any of its conduct might be unreasonable. This is particularly true because plaintiffs provided incomplete information prior to suit and State Farm was unable to obtain an IME without complete medical records. As such,

State Farm is entitled to summary judgment on plaintiffs' common law bad faith breach of contract claim as a matter of law.

3. Plaintiff's Statutory Unreasonable Delay or Denial Claim Fails as a Matter of Law

To prevail on a claim for statutory unreasonable delay or denial pursuant to §§ 10-3-1115 and 1116, C.R.S. plaintiffs must demonstrate that State Farm delayed payment of benefits owed without a reasonable basis. This claim does **not** require that plaintiffs prove that the insurer acted both unreasonably and with knowledge or reckless disregard for its unreasonable conduct. *Masters v. Safeco Ins. Co. of Am*., 2021 WL 4326269, No. 20-CV-00631-PAB-NRN (D. Colo. September 23, 2021.) This claim can be proved if there is evidence that an insurer acted without **any** reasonable basis. *Id*. A statutory delay claim **cannot** stand where the carrier had a reasonable basis for its action. *Id*., *citing Wagner v. Am. Fam. Ins. Co*., 569 F. App'x 574, 580 (10th Cir. 2014); *see also Etherton v. Owners Ins. Co*., 829 F.3d 1209, 1226 (10th Cir. 2016) (*quoting Vaccaro v. Am. Fam. Ins. Grp.*, 275 P.3d 750, 759-60 (Colo. App. 2012)) ("[I]f a reasonable person would find that the insurer's justification for denying or delaying payment of a claim was 'fairly debatable,' this weighs against a finding that the insurer acted unreasonably.")).

In Colorado, acting "without a reasonable basis" has been construed to mean pursuing a groundless position that is not supported by credible evidence. *See Bd. of Cnty. Comm'rs v. Auslaender*r, 745P.2d 999, 1001 (Colo. 1987) (interpreting "without a reasonable basis" in a statute regarding the award of attorney fees in litigation against a public entity). State Farm's handling of this particular claim was supported by the facts and information known to State Farm at various points in time. Thus, the undisputed evidence shows there was a reasonable basis for

State Farm's actions as they developed prior to the time suit was filed. The unreasonable delay claim therefore fails as a matter of law.

WHEREFORE, State Farm respectfully respects the Court enter judgment in its favor on plaintiffs' claims, or, in the alternative, on plaintiffs' Second and Third claims for relief, and such other and further relief as this Court deems necessary and just.

Dated August 26, 2024.

Respectfully submitted,

*s/ Heather A. Salg*_________________
Heather A. Salg
SGR LLC
3900 E. Mexico Ave, #700
Denver, Colorado 80210
HSalg@SGRLLC.com
ATTORNEY FOR DEFENDANT

**CERTIFICATE OF SERVICE**

I hereby certify that on August 26, 2024, a true and correct copy of the above **Motion** was served via email on the following:

Vinod K. Iyer, Esq. #43917

Nicholas D. Stofa, Esq. #56457

Falgien Warr & Iyer, P.C.

4251 Kipling Street, Suite 525

Wheat Ridge, CO 80033

viyer@fwilegal.com

nstofa@fwilegal.com

*/s/ Heather A. Salg*

Heather A. Salg

Index of Attached Exhibits

Exhibit A, Policy Endorsement

Exhibit B, Arguello Report 2/2/24

Exhibit C, 1118 letter

Exhibit D, 7/28/22 Email and attachments

Exhibit E, Plaintiff Expert Disclosure Pleading

Exhibit F, Brown Report

Exhibit G, Roger Knight Report

Exhibit H, State Farm Supplemental Expert Disclosure

Exhibit I, Post Suit Record Example