**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:23-cv-00007-JLK

**CONSTANCE KNIGHT AND ROGER KNIGHT**

Plaintiffs,

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY**

Defendant.

---

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

Plaintiffs, Constance and Roger Knight, by and through counsel at Falgien Warr & Iyer, P.C., hereby submit their Response to Defendant's Motion for Summary Judgment as follows:

## I. Response to Statement of Undisputed Material Facts

1. **Admit.**
2. **Admit** for purposes of summary judgment, however, Defendant's position is that liability for the collision is 100% attributable to Ms. Lewin**.** Def. Ex. B, pg. 9, ¶2, see also Ex. 1, Claim File Excerpt (SF_002751).
3. **Admit.**
4. **Admit.**
5. **Admit.**
6. **Admit.**
7. **Admit.**
8. **Admit.**

9. **Admit.**

10. **Admit.**

11. **Denied.** Plaintiff C. Knight's former counsel provided some medical records and bills to Defendant for evaluation under her medical payments coverage policy on or around July 16, 2019, provided by Defendant under her underinsured motorist coverage policy. Def. Ex. B, pg. 10. Defendant evaluated those provided medical records and bills and exhausted the medical payments coverage policy on or around July 26, 2019. *Id.*, see also Ex. 2, Medpay Exhaust Letter.

12. **Denied.** The letter does not state Plaintiff C. Knight's UIM claim is disputed (the letter does not use the word disputed at all). *See* Ex. 3 (Knight_000695).

13. **Admit.**

14. **Admit.**

15. **Admit.**

16. **Admit.**

17. **Admit.**

18. **Deny.** The letter was sent as a response to a time-limited demand and is therefore a settlement communication. Ex. 4, July 28 Letter, pg. 1. The letter was sent electronically (via e-mail), not via certified mail, and the letter asked Plaintiff to consent to electronic means (otherwise the letter would be sent certified later). *Id.*, see also Def. Ex. C. Additionally, the letter only referenced C.R.S. 10-3-1118 regarding a request for information about Plaintiffs' claim against the Colorado Department of Transportation. *Id.* Finally, Plaintiffs disagree with Defendant that the information requested by Defendant complied with C.R.S. 10-3-1118, specifically, "the written request is for

information a reasonable person would determine the insurer needs to adjust the claim filed by the insured or to prevent fraud." Colo. Rev. Stat. § 10-3-1118(d).

**19. Admit.**

**20. Deny.** The letter uses qualifying language that Defendant *should* have the "complete universe" of records Defendant stated were necessary *to perform a pre-suit independent medical examination*, and Plaintiff specifically advised that treatment was ongoing and some records were not obtained yet. Ex. 5, Dec. 9, 2022, Letter, pg. 2.

**21. Admit.**

**22. Admit.**

**23. Admit.**

**24. Admit.**

**25. Deny.** Defendant fails to provide a citation to either report to support this proposition. Motion, pg. 5, ¶25. Mr. Brown states in his report that he reviewed sales brochure, sales slide, executive summary, Yellow Jacket Sales Poster, among several other materials which collectively indicate that Plaintiff C. Knight had pecuniary interest in the prospect. Ex. F, pg. 1.

**26. Admit,** however, to the extent that Defendant claims it was prejudiced and claims it "had" to retain experts to timely rebut Plaintiffs' experts, several extensions of time were unopposed in this case by both parties. Dkt. 24, Dkt. 28, Dkt. 31, Dkt. 33, Dkt. 39, Dkt. 43, Dkt. 48.

**27. Deny.** Defendant inappropriately offers an argument as an undisputed fact without any citation to the record. Mtn, pg. 5 ¶27. Plaintiffs' counsel is unclear what Defendant's counsel is referring to by the statement "Through today's conferral with plaintiff's

counsel, no evidence has ever been disclosed…" *Id.* Plaintiffs dispute the claim that they have provided no evidence regarding Plaintiff C. Knight's loss of opportunity claim.

**28. Deny.** Plaintiff previously provided Defendant with releases ("ARIs") in response to the July 28, 2022 letter prior to litigation. *See* Ex. 6, Release Email.

**II. Statement of Additional Undisputed Facts:**

1. Plaintiff C. Knight testified that she owned leases but gave them up because of no surface occupancy rules. Ex. 7, C. Knight Depo, pg. 33, ln. 1-8.
2. Plaintiff C. Knight testified she held "fee leases." *Id.*, pg. 37, ln. 4-6. In fact, Plaintiff C. Knight testified that she held a "fair number of leases." *Id.* Pg. 38, ln. 16.
3. Plaintiff C. Knight testified that she does not have documentation of the leases but believes that the leases she did own were put into a unit, and that they expired and she lost them at some point in time. *Id.* Pg. 160, ln. 14-20.
4. On December 29, 2021, Defendant's representative provided the authorization for release of information and stated that *if counsel wanted State Farm to obtain the records*, they should have Plaintiff C. Knight execute the release. Def. Ex. B, at 17, ¶3, see also Ex. 3, pg. 1, ¶5.
5. Plaintiff previously provided Defendant with releases ("ARIs") in response to the July 28, 2022, letter prior to litigation. *See* Ex. 6, Release Email.
6. Plaintiff C. Knight, through counsel, provided a statement from Plaintiff C. Knight on March 29, 2022, as an exhibit to a demand letter which summarizes her prior medical treatment summarizing her efforts to contact her health insurance company regarding requested prior medical treatment. Def. Ex. B, pg. 20-21. In that same demand letter, Plaintiff C. Knight explains her wage loss or loss of opportunity claim and provides an

example of a sale for $915,096.00 for sale of her mineral leases. *Id.* Defendant documented this in the claims file and provided a response on April 29, 2022, stating that Plaintiff C. Knight's wage loss claim was "somewhat unusual", and Defendant would need to investigate this more as well. *Id.*

7. Elmo Brown testified at his deposition on May 30, 2024, that while he is not a "land man" he can't say where [leases] would be reported, but [he] would think they would be in the county courthouse." Ex. 8, E. Brown Dep, pg. 15, ln. 16-18. He additionally testified he "[C]ould have gone to the county courthouse to look [the leases] up." *Id.* at pg. 38, ln. 10-11.
8. Plaintiff Roger Knight testified on July 11, 2024 that he and Plaintiff C. Knight owned leases and that they own a mix of federal and fee leases. Ex. 9, R. Knight Dep., pg. 34-35, ln. 1-25, ln., 1-25; pg. 37, ln. 9-18. Plaintiff R. Knight also testified the leases may have been owned under the Knights' own names or under Knight Technical Services, LLC. *Id.* at 21-25.
9. Plaintiff R. Knight testified that the Knights currently own one federal lease and some fee leases, but that he isn't sure of their status. *Id.* pg. 40, ln. 11-13.
10. Plaintiff R. Knight testified that the leases were valuable because they were 12 ½ percent royalty federal leases and had some time…where now they've raised the royalty rate…so [The Knight's] leases at the time would have been more valuable. *Id.*, pg. 41, ln. 22-25; pg. 42, ln. 1-4.

## III. Standard of Review

Plaintiff agrees with Defendant's recitation of the legal standard of review for summary judgment motions under F.R.C.P. 56 and incorporates the same herein.

## IV. Authority

### a. Failure to Cooperate Standard:

For an insurer to assert the affirmative defense of failure to cooperate, it must show: (1) "the insured fails to cooperate with the insurer in some material and substantial respect"; and (2) "this failure to cooperate materially and substantially disadvantaged the insurer." *Soicher v. State Farm Mut. Auto. Ins. Co*., 351 P.3d 559, 564, 2015 COA 46 (Colo. App. 2015). Although the question of whether an insured failed to cooperate is a question of fact, if "the record can produce no other result" than a finding of a failure to cooperate, the insurer is entitled to summary judgment. *Hansen v. Barmore*, 779 P.2d 1360, 1364 (Colo. App. 1989), see also *Hall v. Allstate Fire & Cas. Ins. Co*., 20 F.4th 1319, 1323. The standard to establish a material and substantial disadvantage is whether an insured's conduct prevented a reasonable investigation under the circumstances, not whether an insurer's investigation was rendered impossible. *Hall v. Allstate Fire & Cas. Ins. Co.,* 20 F.4th 1319, 1324. In general, an insured breaches the cooperation clause of his insurance policy when he "fails to cooperate with the insurer in some material and substantial respect and the failure to cooperate causes material and substantial disadvantage to the insurer." *Soicher v. State Farm Mut. Auto. Ins. Co.*, 351 P.3d 559, 2015 COA 46, ¶ 25. "The scope of such noncooperation therefore depends on the specific policy provision at issue." *Id.* The question of whether an insured failed to cooperate with the insurer is a question of fact. *See Farmers Auto. Inter-Ins. Exch. v. Konugres*, 119 Colo. 268, 276, 202 P.2d 959, 963 (1949).

### b. Common Law Bad Faith and Unreasonable Delay and Denial Standards:

To prevail on a statutory bad faith claim, a plaintiff must prove that the insurer unreasonably delayed or denied payment of the claim. *Vaccaro v. Am. Family Ins. Grp.*, 2012 COA 9M, 275 P.3d 750, 756 (Colo. App. 2012); *see* Colo. Rev. Stat. § 10-3-1115(1)(a) ("A person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant."). An insurer's delay is unreasonable "if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action." Colo. Rev. Stat. § 10-3-1115(2). The determination of whether an insurer has breached its duties to the insured is one of reasonableness under the circumstances. *Estate of Morris v. COPIC Ins. Co.*, 192 P.3d 519, 523 (Colo. App. 2008). In other words, the question is whether a reasonable insurer under similar circumstances would have denied or delayed payment of the claim. *Id.* The reasonableness of an insurer's conduct must be determined objectively, based on proof of industry standards. *Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1274 (Colo. 1985). Whether an insurer's conduct was reasonable under the circumstances is ordinarily a question of fact for the jury when conflicting evidence exists. *Zolman v. Pinnacol Assur.*, 261 P.3d 490, 497 (Colo. App. 2011). However, in appropriate circumstances, as when there are no genuine disputes of material facts, reasonableness may be decided as a matter of law. *COPIC*, 192 P.3d at 524. The burden to establish unreasonableness lies with plaintiff. *See Williams v. Owners Ins. Co.*, 621 F. App'x 914, 919 (10th Cir. 2015) (unpublished) (applying Colorado law).

A common law bad faith claim is a distinct cause of action from the statutory bad faith claim. *Foster v. USAA Gen. Indem. Co.*, 2022 U.S. Dist. LEXIS 223509, *7**,** see also *Vaccaro*, 275 P.3d at 756. To succeed on a common law bad faith claim, "a plaintiff must show that the insurer acted both unreasonably and with knowledge of or reckless disregard of its unreasonableness." *Hyden v. Farmers Ins. Exch.*, 20 P.3d 1222, 1226 (Colo. App. 2000). Under

common law, finding that an insurer's justification for denying or delaying payment of a claim is "fairly debatable" typically weighs against finding that an insurer acted unreasonably. *Sanderson v. Am. Family Mut. Ins. Co.*, 251 P.3d 1213, 1218 (Colo. App. 2010) (citation omitted).

## V. Argument

### a. Defendant Has Not Shown that Plaintiffs' Alleged Non-Cooperation is Substantial and/or Material Such that the Failure Caused a Substantial Disadvantage to Defendant:

Defendant first argues that Plaintiff "was not provided with relevant information by the Knight plaintiffs either before this suit was filed or after." Motion, pg. 8. Plaintiffs' insurance claims handling expert, Damian Arguello, recites in his eighty-page report[1] the history of the communications between the Plaintiffs and Defendant. Def. Ex. B, pg. 10-30. On December 9, 2018 (the day after the incident), Plaintiffs reported the incident to Defendant. *Id.*, pg. 8. As early as December 9, 2018, Plaintiffs indicated that C. Knight was injured in the incident. *Id.* The report shows that Plaintiff C. Knight called State Farm on January 28, 2019, sent a letter through counsel on June 14, 2019, and that Plaintiff C. Knight submitted medical documentation to her medical payments policy on July 26, 2019, prompting exhaustion of that policy. *Id.* at 9-10.

For an insurer to assert the affirmative defense of failure to cooperate, it must show: (1) "the insured fails to cooperate with the insurer in some material and substantial respect"; and (2) "this failure to cooperate materially and substantially disadvantaged the insurer." *Soicher v. State Farm Mut. Auto. Ins. Co*., 351 P.3d 559, 564, 2015 COA 46 (Colo. App. 2015). The standard to establish a material and substantial disadvantage is whether an insured's conduct prevented a reasonable investigation under the circumstances, not whether an insurer's investigation was rendered impossible. *Hall v. Allstate Fire & Cas. Ins. Co.*, 20 F.4th 1319, 1324.

[1] Plaintiffs note that Defendant's claim file for this claim is over 2,500 pages long.

Defendant has not demonstrated that Plaintiffs failed to cooperate with the insurer in some material and substantial respect. Despite Defendant's contention that Plaintiffs "repeatedly refused to provide relevant information", it did not affect Defendant's ability to conduct a reasonable investigation. Indeed, Defendant's representative noted in the claims file on May 1, 2020 that despite an ARI still being needed, the claims representative documented the file with a plan including: "[F]ollowing up for other insurance company limits and photos, finding out how [Plaintiff C. Knight] is doing, ordering the policy, requesting an asset report, and following up on injuries and treatment as well as demand status, evaluation and settlement." Ex. B, pg. 11. After May 8, 2020, Defendant's representative made no attempt to follow up on the release of information in subsequent contacts, and Defendant's representative made no claim that the lack of authorization prevented her from performing her investigation. *Id.*, pg. 11-12. Indeed, Defendant's representative emails Plaintiffs' counsel on June 10, 2020 answering a question, and again on September 3, 2020 requesting a status update on the claim. *Id.* Plaintiffs' counsel responded promptly on September 9, 2020, and advised that a demand would soon be sent to the tortfeasor's insurance company. *Id.* at 12.

In its Motion, Defendant states that the incident occurred in December 2018, but Defendant did not receive the ARI until July 28, 2022. Motion, pg. 9. Defendant provides no argument or identifies any document from the record which supports its claim that it was prevented from investigating Plaintiffs' claim. Defendant merely states that it did not get "some" of the medical records until 2023 but does not identify which records these were or whether they were material to its investigation of Plaintiffs' claim. *Id.* Defendant makes no mention of the fact that, as recited in Mr. Arguello's report, Plaintiffs submitted medical documentation to the medical payments policy as early as 2019 or sent multiple demand letters with medical records

and bills in 2021 and 2022. Def. Ex. B, pg. 10-30. Defendant states Plaintiffs provided an incomplete list of medical providers when they "finally" submitted the materials on July 28, 2022, but Plaintiffs completed the list to the best of their knowledge and recollection. Motion, pg. 9.

In general, an insured breaches the cooperation clause of his insurance policy when he "fails to cooperate with the insurer in some material and substantial respect and the failure to cooperate causes material and substantial disadvantage to the insurer." *Soicher v. State Farm Mut. Auto. Ins. Co.*, 351 P.3d 559, 2015 COA 46, ¶ 25. "The scope of such noncooperation therefore depends on the specific policy provision at issue." *Id.* The question of whether an insured failed to cooperate with the insurer is a question of fact. *See Farmers Auto. Inter-Ins. Exch. v. Konugres*, 119 Colo. 268, 276, 202 P.2d 959, 963 (1949).

Defendant makes no argument that the lack of provision of the ARIs was a "material" or "substantial" breach of the duty to cooperate. Defendant's representative sent a status request on November 23, 2020, again with no mention of the ARI, and with no accusation that the lack of ARI prevented her investigation into the claim. *Id.* Plaintiffs' counsel responded on November 24, 2020 advising that a demand was submitted to the tortfeasor and that Plaintiff C. Knight was receiving treatment. *Id.* On December 10, 2020 Plaintiffs' counsel sent notice that the tortfeasor's insurance company offered to tender the policy limit, and Defendant consented. *Id.* Again, no mention was made of the ARI and no statement that Defendant experienced any prejudice as a result. For these reasons, Defendant cannot reasonably argue that the non-provision of ARIs was a material and substantial lack of compliance.

Critically, Defendant allowed Plaintiffs the option to forgo the releases and obtain the records themselves, indicating that Plaintiffs had an option to elect to sign the releases, or

provide the records themselves. On December 29, 2021, Defendant's representative provided the authorization for release of information and stated that *if counsel wanted to State Farm to obtain the records*, they should have Plaintiff C. Knight execute the release. *Id.* at 17, ¶3, see also Ex. 3, pg. 1, ¶5. Not only did Defendant *not* raise the issue of prejudice or claim that Plaintiffs were preventing Defendant from completing its investigation, but Defendant also offered Plaintiff the choice of whether to provide the records herself. *Id.* The scope of such noncooperation therefore depends on the specific policy provision at issue." *Soicher v. State Farm Mut. Auto. Ins. Co.*, 351 P.3d 559, 2015 COA 46, ¶ 25. Basically, Defendant gave Plaintiffs the option to either sign the release and allow Defendant to request the records, or to obtain the records themselves. *Id.* at 17, ¶3, see also Ex. 3, pg. 1, ¶5. A reasonable inference drawn from the record suggests that Defendant interpreted the policy provision as open-ended. Defendant cannot claim that it is prejudiced when it provided Plaintiffs an option to sign the release or obtain the records on their own.

Defendant argues that Plaintiffs have never produced proof she owns the mineral leases. Motion, pg. 9. Defendant's argument is essentially that the lease itself is the only proof that she owned them. Plaintiff C. Knight's work is unusual and not easy to quantify because it depends on her ability to market leases and collect royalties if those leases yield productive oil and gas prospects. Plaintiff C. Knight, through counsel, provided a statement from Plaintiff C. Knight on March 29, 2022, as an exhibit to a demand letter which summarizes her prior medical treatment summarizing her efforts to contact her health insurance company regarding requested prior medical treatment. Def. Ex. B, pg. 20-21. In that same demand letter, Plaintiff C. Knight explains her wage loss or loss of opportunity claim and provides an example of a sale for $915,096.00 for sale of her mineral leases. *Id.* Defendant documented this in the claims file and provided a

response on April 29, 2022, stating that Plaintiff C. Knight's wage loss claim was "somewhat unusual" and Defendant would need to investigate this more as well. *Id.* Defendant did not request releases for wage information at that time, nor did it specify what information it was seeking.

While Plaintiff acknowledges that the *Hall* case stands for the proposition that the source of the prejudice cannot be cured during litigation because it is "too late", Defendant did not specify what information it was seeking to prove the veracity of Plaintiff C. Knight's loss of opportunity claim before suit. *Hall*, F.4th, 1319 at 1325, see also Def. Ex. B, pg. 23. During litigation, Plaintiff testified that she owned leases but gave them up because of no surface occupancy rules. Ex. 7, C. Knight Depo, pg. 33, ln. 1-8. Plaintiff C. Knight testified she held "fee leases." *Id.*, pg. 37, ln. 4-6. In fact, Plaintiff C. Knight testified that she held a "fair number of leases." *Id.* Pg. 38, ln. 16. Plaintiff C. Knight testified that she does not have documentation of the leases but believes that the leases she did own were put into a unit, and that they expired and she lost them at some point in time. *Id.* Pg. 160, ln. 14-20. Defendant states that by not providing the lease itself, Plaintiffs have failed to comply with the policy even though Defendant itself admitted that the claim was unusual, and it would need to investigate further. Def. Ex. B, pg. 20-21. Defendant does not provide any examples or argument as to why this constitutes a failure to cooperate when Plaintiff C. Knight has provided other evidence of the claim, even if she has not provided the lease.

Indeed, Elmo Brown testified at his deposition on May 30, 2024, that while he is not a "land man" he can't say where [leases] would be reported, but [he] would think they would be in the county courthouse." Ex. 8, E. Brown Dep, pg. 15, ln. 16-18. Mr. Brown's testimony indicates that the land leases are publicly available and that anyone can request to view the lease

documents. He additionally testified he "[C]ould have gone to the county courthouse to look [the leases] up." *Id.* at pg. 38, ln. 10-11. Again, while Mr. Brown is not completely sure, he suggests that the leases are equally available to both parties. Plaintiff Roger Knight testified on July 11, 2024, that he and Plaintiff C. Knight owned leases and that they own a mix of federal and fee leases. Ex. 9, R. Knight Dep., pg. 34-35, ln. 1-25, ln., 1-25; pg. 37, ln. 9-18. Plaintiff R. Knight also testified the leases may have been owned under the Knights' own names or under Knight Technical Services, LLC. *Id.* at 21-25. Plaintiff R. Knight testified that the Knights currently own one federal lease and some fee leases, but that he isn't sure of their status. *Id.* pg. 40, ln. 11-13. Thus, there is evidence in the record to suggest that as of Mr. Brown's deposition on May 30, 2024, Defendant may have had equal access to the leases, and Defendant makes no argument that it tried and failed to obtain the leases from publicly available sources.

Defendant goes on to claim that the lack of lease caused it "substantial prejudice" because Defendant had to retain experts to defend against a claim that lacks "lynchpin evidence", i.e. the leases which prove she owned them. Motion, pg. 9. Defendant's argument is not based on the failure to cooperate defense but is rather an argument about what weight, if any, should Plaintiffs' testimony regarding the loss of opportunity claim be given. Defendant and Plaintiffs clearly dispute the evidence in the record regarding the loss of opportunity claim: Plaintiffs believe that through various evidence including her own testimony, the purchase and sale agreement, and other materials in Mr. Brown's expert file, she has demonstrated that she engaged in this kind of work, made significant amounts of money, and lost opportunities to do so in the future. Ex. F, pg. 1. Indeed, Mr. Brown states in his report that he reviewed sales brochure, sales slide, executive summary, Yellow Jacket Sales Poster, among several other materials which collectively indicate that Plaintiff C. Knight had pecuniary interest in the prospect. Ex. F, pg. 1.

Defendant's argument, ostensibly about non-cooperation, is actually whether Plaintiffs' loss of opportunity claim should fail because Defendant believes it lacks merit.

Defendant acknowledges that a failure to cooperate defense is based on C.R.S. 10-1-1118 and notes that it sent a letter pursuant to the statute. Motion, pg. 10. Defendant's statement is confusing because Defendant's letter was not pursuant to the statute, it was a settlement communication which contained a request within it under the statute *specifically requesting information for the CDOT claim.* The letter was sent as a response to a time-limited demand and is therefore a settlement communication. Ex. 4, July 28 Letter, pg. 1. The letter did not comply with C.R.S. 10-3-1118 because it was sent electronically (via e-mail), not via certified mail, and the letter asked Plaintiff to consent to electronic means (otherwise the letter would be sent certified later). *Id.*, see also Def. Ex. C. Additionally, the letter only referenced C.R.S. 10-3-1118 regarding a request for information about Plaintiffs' claim against the Colorado Department of Transportation. *Id.* The letter states:

> It is not only reasonable for State Farm to request this information but essential to evaluate fault for this accident. Pursuant to C.R.S. 10-3-1118, this information is not available to State Farm without the assistance of Dr. Knight. We have accessed the publicly available information on [CCEF], but your disclosures reference a now-expired link and CDOT's disclosures have the standard protections afforded initial disclosures filed in Colorado state court. We are asking that you provide all documents that were exchanged during litigation so that we can better understand CDOT's involvement. You have sixty days from the receipt of this letter to provide the requested documents. Please confirm that communication via electronic means is sufficient. Otherwise, we'll send the request via certified mail.

Ex. 4, pg. 3., ¶3. Defendant makes no argument that the letter's C.R.S. 10-3-1118 request applied to medical authorizations or loss of opportunity information. Similarly, Defendant's request is not reasonable under the statute because Defendant itself admitted that fault was 100% attributed to the tortfeasor, as discovered in the claims file. Def. Ex. B, pg. 9, ¶2, see also Ex. 1, Claim File

Excerpt (SF_002751). It is unclear why this information became necessary several months after liability was apparently determined.

Regardless, Defendant concedes that Plaintiffs complied on the same day with the ARI and MPS. Motion, pg. 10. Defendant argues that the MPS was incomplete. *Id.* Defendant again makes no reference to the failure to cooperate standards with this argument and does not explain how it was unable to perform a reasonable investigation as a result, or explains how the non-compliance was "substantial." *Id.*

Lastly, Defendant argues that it indicated it needed more time to respond to Plaintiffs' expert disclosures and it did not have the documents from Mr. Brown and Plaintiff R. Knight's expert file. Motion, pg. 10. The referenced motion, Dkt. 38, 6 and 7 states:

> However, those disclosures were not complete, as the records relied upon by Mr. Roger Knight (who, although he is a plaintiff, was also endorsed as an expert in the fields of economics and mineral and gas) were not provided to defendant and as of the date of this filing have still not been provided to defendant.
>
> Without the complete data relied upon for the opinions of Mr. Knight and the oil/gas expert he consulted with, defendant is not in a position to evaluate the income loss claims made by Mr. Knight, for Ms. Knight.

Dkt. 38, at 6 and 7. Plaintiffs do not understand this argument under the failure to cooperate defense. Defendant states it could not have given Plaintiffs a 120-day cure period under C.R.S. 10-3-1118, but this Motion for an Extension of Time was filed unopposed because Plaintiffs agreed Defendant's experts needed time to review the information. *Id.* The motion was granted and Defendant's experts reviewed the information and rendered opinions, as Defendant states. Motion, pg. 11. Defendant argues that this was somehow prejudicial, even though Defendant had notice of Plaintiff C. Knight's loss of opportunity claim well before litigation. It is unclear how this argument is relevant to an alleged "failure to cooperate" when it appears to be a simple logistical delay that was cured through an extension of time with the Court.

For the foregoing reasons, Defendant has failed to show that Plaintiffs failed to cooperate with Defendant. Defendant has not met the summary judgment standard to show that there's no material dispute of fact regarding this issue. Moreover, Defendant has not met its burden to show the affirmative defense of failure to cooperate has been proven, i.e. (1) "the insured fails to cooperate with the insurer in some material and substantial respect"; and (2) "this failure to cooperate materially and substantially disadvantaged the insurer." *Soicher v. State Farm Mut. Auto. Ins. Co.*, 351 P.3d 559, 564, 2015 COA 46 (Colo. App. 2015).

### b. Defendant Argues That Plaintiffs' Common Law Bad Faith Claims are Not Supported by Evidence but Ignores Plaintiffs' Expert's Eighty Page Report Regarding Evidence from the Claims File that Defendant Acted in Bad Faith:

Defendant next argues that during conferral, when asking Plaintiffs' counsel what theories under bad faith Plaintiffs are relying on to show bad faith, that its theories are not supported by the law, specifically the duty to investigate. Motion, pg. 12. However, Plaintiffs' counsel has advanced several theories of bad faith or unreasonable delay and denial and has expended case costs and attorney's fees on an insurance claims handling expert that provided multiple opinions (both initial and rebuttal), including the initial eighty page report regarding common law bad faith and statutory bad faith which present issues of fact for the jury. *See* Def. Ex. B. Moreover, Plaintiff C. Knight provided her own view of Defendant's handling of this claim. In her letter provided to Defendant on March 29, 2022, Plaintiff C. Knight states in her own words:

> I believe that [Defendant] has unnecessarily stalled compensation for my legitimate medical expenses following the December 2018 accident. I compare my State Farm experience with that of Progressive Insurance. In January 2002, I was involved in a similar accident. I was rear-ended by a drunk driver. My insurer was Progressive. I represented myself without the aid of an attorney. Progressive was quick to pay for medical bills and compensate me generously and appropriately for pain and suffering. I respectfully request that you provide me with compensation due me.

Def. Ex. B, pg. 22.

Indeed, Plaintiffs have advanced several theories of bad faith, both common law and statutory. For example, Mr. Arguello opined: (1) Defendant refused to pay the claim without conducting a reasonable investigation based upon all available information, (2) Defendant didn't attempt in good faith to effectuate a prompt, fair, and equitable settlement although liability became reasonably clear, (3) Defendant failed to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for partially denying Dr. Knight's UIM claim or for its compromise settlement offer, (4) Defendant failed to acknowledge and act reasonably promptly upon communications with respect to Plaintiffs' claims, (5) Failing to adopt and implement reasonable standards for prompt investigation of claims arising under insurance policies, and (6) Defendant compelled Plaintiffs to institute litigation to recover amounts due under the UIM policy by offering substantially less than the amount she may recover in this action. Def. Ex. B, pg. 51-63. Defendant challenges several of these opinions in its Motion to Strike, Dkt. 54. The only opinions Defendant addresses under summary judgment are the failure to investigate and the common law and statutory bad faith claims generally. Motion, pg. 12-14.

Defendants' arguments against the common law bad faith claims essentially boils down to (1) the theory regarding investigation must fail and (2) the claims generally fail because Plaintiffs cannot show any facts that Defendant failed to adhere to Colorado insurance law. Motion, pg. 12-14. Regarding the failure to investigate theory, Mr. Arguello authors a six-page opinion regarding Defendant's shortcomings in this regard. Def. Ex. B, pg. 51-57. Plaintiffs offer several factual bases for the allegations that Defendant did not conduct a reasonable investigation

including Defendant's failure to take a recorded statement (where it could have asked about medical treatment or loss of opportunity claims) (pg. 51, ¶2), deficiencies in the initial investigation including claim file documentation (pg. 51, ¶2, pg. 52, ¶3), Defendant's lack of investigation into the facts or circumstances of the incident (pg. 52, ¶4), Defendant's lack of investigation into CDOT's share of responsibility for liability, if any, (pg. 53, ¶1), taking no action on the file until April 24, 2021 after the tortfeasor settlement on December 10, 2020 (pg. 53 ¶3), etc.

Defendant argues that Plaintiff cannot show that there was "any fact" that State Farm should have but did not uncover before suit was filed. Motion, pg. 12. This is patently false. Defendant ignores the fact that it requested more information regarding the loss of opportunity claim and medical claim because both were "unusual" prior to suit, but then did not follow up on the loss of opportunity claim until litigation was filed. Def. Ex. B, pg. 20-21. Moreover, Defendants gloss over the multiple investigative shortcomings Mr. Arguello identified which are stated in the preceding paragraph. Lastly, at a minimum, Defendant and Plaintiffs have a dispute of material fact regarding whether the other acted reasonably or not. The dispute should be resolved by the jury as finder of fact. Thus, Defendant's motion for summary judgment regarding the failure to investigate claim must fail.

Finally, Defendant argues that summary judgment is appropriate as to the common law bad faith claims because "there is no evidence that State Farm failed to do anything other than act reasonably as any other insurer would have, given the facts as they developed in this case." Motion, pg. 13. Tellingly, Defendant does not provide a single citation to the record in this paragraph to support this contention. Defendant once again ignores the opinions of Plaintiffs' expert which states exactly why Plaintiffs believe that Defendant acted in bad faith. Def. Ex. B,

pg. 51-63. Moreover, Plaintiff C. Knight wrote her own statement which criticizes Defendant's handling of her claim and expresses her belief that Defendant has not upheld its duties to her. Def. Ex. B, pg. 22. Defendant rehashes its argument from the failure to cooperate section stating that Plaintiffs failed to provide information it needed. Motion pg. 13. Defendant offers no evidence to rebut Mr. Arguello's opinions or explains why a jury should be unable to determine whether Defendant acted reasonably or not. Defendant simply states Plaintiffs have shown no evidence (even though Plaintiffs have spent extensive time and money on expert opinion) of the bad faith claim. Defendant is not entitled to summary judgment because it offers the Court a conclusory argument not based on the record. Plaintiffs' case should be heard by a jury.

**c. Plaintiffs Statutory Claims Should Survive for the Same Reasons as Stated Above:**

Defendant's final argument is that it has provided the Court with undisputed evidence it acted reasonably. Motion, pg. 15. Defendant goes as far as to say "[T]he undisputed evidence shows that there was a reasonable basis for State Farm's actions as they developed prior to the time suit was filed." *Id.* Plaintiffs do not understand this argument because Defendant does not present the Court with any undisputed evidence that apparently shows Defendant acted with a reasonable basis during the handling of this claim. Plaintiffs have submitted in the record multiple citations to examples of conduct it claims is tantamount to bad faith, unreasonable delay, etc. At the risk of rehashing the above arguments, Plaintiffs incorporate their argument from section (b) of this Motion regarding why summary judgment is inappropriate, specifically because Plaintiffs' and their expert's opinion that Defendant acted unreasonably and committed bad faith.

**CONCLUSION**

**WHEREFORE,** Plaintiffs respectfully move the Court to deny Defendant's Motion for Summary Judgment in full. In the alternative, if the Court believes summary judgment is warranted, Plaintiffs seek the Court's leave to re-open discovery to obtain affidavits or other evidence which demonstrate that the claims challenged should survive summary judgment.

**DATED:** September 16, 2024

Respectfully submitted,

*/s/Nicholas D. Stofa*
Brianne N. Falgien, Esq. #40903
Vinod K. Iyer, Esq. #43917
Nicholas D. Stofa, Esq. #56457
Falgien Warr & Iyer, P.C.
4251 Kipling Street, Suite 525
Wheat Ridge, CO 80033
Telephone: (303) 731-4790
Fax: 720-619-4895
Email: viyer@fwilegal.com
Email: bfalgien@fwilegal.com
Email: nstofa@fwilegal.com
*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 16, 2024, I served a true and accurate copy of the foregoing Plaintiff's Response to Defendant's Motion to Summary Judgment upon all parties through the court's ECF system as follows:

Heather A. Salg, Esq.
SGR, LLC
3900 East Mexico Avenue, Suite 700
Denver, CO 80210
Phone: 303-320-0509
Fax: 303-320-0210

Email: hsalg@sgrllc.com
*Attorney for Defendant State Farm Mutual Automobile Insurance Company*

/s/

## APPENDIX – EXHIBITS

**Exhibits enclosed as follows:**

1. Claims File Excerpt
2. Medpay Exhaust Letter
3. Dec. 29 Letter
4. July 28 Letter
5. Dec. 6 Letter
6. Email w/ Releases
7. C. Knight Deposition
8. E. Brown Deposition
9. R. Knight Deposition