IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-00007-JLK-CYC

CONSTANCE KNIGHT,
ROGER KNIGHT,

      Plaintiffs,

v.

STATE FARM AUTOMOBILE INSURANCE COMPANY,

      Defendant.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Cyrus Y. Chung, United States Magistrate Judge.**

In Colorado, an insurer seeking to defeat a lawsuit from its insured by asserting that the insured failed to cooperate in the claims process must strictly follow certain statutory requirements. Defendant State Farm Automobile Insurance Company moves for summary judgment on its failure-to-cooperate defense against plaintiffs Constance Knight ("Dr. Knight") and Roger Knight. ECF No. 56 at 7–11. But because the defendant did not follow the letter of Colorado Revised Statute § 10-3-1118, its bid to preclude their lawsuit on those grounds fails.

The defendant also moves for partial summary judgment on the plaintiffs' common-law and statutory bad-faith claims, asserting that the plaintiffs can neither prove that it acted unreasonably or that it knowingly or recklessly disregarded the validity of the plaintiffs' claims. *Id.* at 11–15. But a genuine issue of material fact exists as to those claims, making summary judgment inappropriate. Accordingly, the Court **recommends** that the defendant's motion for summary judgment, ECF No. 56, be **DENIED**.

## LEGAL STANDARDS

A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A fact is material if under the substantive law it is essential to the proper disposition of the claim." *Wright ex rel. Tr. Co. of Kan. v. Abbott Lab'ys, Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (quotation marks omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. The dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. "The moving party has both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law." *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (quotation marks omitted).

If the moving party satisfies its initial burden, the non-moving party "may not rest on its pleadings, but must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Id.* (quotation marks omitted). The specific "facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Libertarian Party of N.M. v. Herrera*, 506 F.3d 1303, 1309 (10th Cir. 2007). Affidavits and testimony "must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient." *Tucker v. Faith Bible Chapel Int'l*, 36 F.4th 1021, 1030–31 (10th Cir. 2022). "The court views the record and draws all favorable inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

## UNDISPUTED FACTS

The following facts are undisputed and identified by reference to "particular parts of materials in the record," Fed. R. Civ. P. 56(c)(1)(A).

On December 8, 2018, Dr. Knight was injured in an automobile accident caused by a washout on the road and a non-party at-fault driver. ECF No. 22 § 4, ¶¶ 1–3. After recovering $25,000 from the at-fault driver's insurance carrier — the policy limit — Dr. Knight sought underinsured motorist ("UIM") benefits from her own insurance carrier, the defendant. *Id.* § 4, ¶¶ 4–5. The parties do not say when Dr. Knight initiated this process, though it appears to have been April 21, 2020. *See* ECF No. 56-2 at 10.

That kicked off a two-year-long dialogue regarding Dr. Knight's medical records. On May 8, 2020, the defendant acknowledged receipt of the UIM claim and requested that Dr. Knight sign and return an enclosed authorization for release of medical information and medical provider summary. ECF No. 56-2 at 11.[1] The defendant requested updates on Dr. Knight's injury and treatment status three times over the next year. *Id.* at 12–14.

Apparently, these efforts were successful at securing at least some documentation. On December 29, 2021, the defendant notified Dr. Knight that after considering $13,616.42 of her documented medical expenses and the $25,000 received from the at-fault driver's insurance company, it had decided to extend an offer of $8,616.42 on the UIM claim. ECF No. 62-3 at 1. The defendant noted its concerns that some medical treatment may have been unrelated to the collision and requested that Dr. Knight either provide a complete copy of her medical records or complete an equivalent authorization for release of medical information and provider summary

---

[1] For reasons that are unclear, the defendant cites to a factual summary in one of the plaintiffs' expert reports for these facts rather than attaching and citing the underlying documentation. *See* ECF No. 56 at 3. But this failure to cite actual evidence appears mostly harmless, as the plaintiffs, unsurprisingly, largely agree with their own expert's recitation of the facts.

3

sheet. *Id.* at 1–2. After obtaining those records, the defendant said, it might ask Dr. Knight to attend an independent medical examination ("IME") or utilization review. *Id.* at 2.

Neither one of those alternatives materialized prior to the filing of this case. Instead, five weeks later, citing its policy requiring Dr. Knight to cooperate with its investigation, the defendant reiterated its request for complete medical records. ECF No. 56-2 at 18. Seven weeks after that, Dr. Knight provided additional medical records and attached a statement summarizing her medical treatment. *Id.* at 20–22. A month later, the defendant requested further medical records and informed the plaintiff that it would need to investigate a unique medical claim that the accident was linked to a later allergic response Dr. Knight suffered. *Id.* at 22–23. On May 13, 2022, the defendant again requested an authorization for release of medical information and provider summary sheet from Dr. Knight. *Id.* at 23.

On July 28, 2022, the defendant sent a letter to Dr. Knight that cited Colo. Rev. Stat. § 10-3-1118 in a section requesting documents supporting a related claim Dr. Knight had against the Colorado Department of Transportation ("CDOT") for the washout's contribution to the accident. ECF No. 56-3 at 3. The letter separately insisted that Dr. Knight had an obligation to sign a written authorization for medical bills and records. *Id.* at 2–3. That same day, Dr. Knight provided the defendant with an authorization for release of medical information and provider summary sheet. ECF No. 56-4. On December 6, 2022, Dr. Knight informed the defendant that it "should" have the "current 'complete universe' of records." ECF No. 62-5 at 2.

In addition to a claim for medical expenses, Dr. Knight sought coverage for lost wage opportunities. In April 2022, the defendant made a note in Dr. Knight's file that she was seeking $250,000 to $2,000,000 in wage loss opportunities. ECF No. 56-2 at 22. These opportunities

relate to mineral leases that Dr. Knight purportedly owned but was unable to pursue because of the accident. *See* ECF No. 56-5 at 2; ECF No. 56-6 at 1–3.

On December 9, 2022, the plaintiffs initiated this action. ECF No. 5. The defendant removed the case to this Court. ECF No. 1. During litigation, the defendant obtained additional medical records. ECF No. 56-9 at 1. It moved for summary judgment in August 2024. ECF No. 57. The district judge referred the motion to the undersigned in July 2025. ECF No. 71.

## ANALYSIS

The plaintiffs bring four claims against State Farm: (1) breach of contract; (2) bad faith; (3) violation of Colo. Rev. Stat. § 10-3-1115, Improper Delay and Denial of Claim, and Colo. Rev. Stat. § 10-3-1116(1); and (4) loss of consortium for Roger Knight. ECF No. 5 at ¶¶ 74–140. Each of these claims is premised on the plaintiffs' belief that the plaintiffs are owed UIM benefits that the defendant did not provide.

### I.      Failure to Cooperate Defense

In its Answer, the defendant asserted that the plaintiffs' claims were barred by a failure to comply with certain conditions in their policy. It now seeks summary judgment on that defense. ECF No. 56 at 7–11. Specifically, the defendant asserts that the plaintiffs failed to cooperate by failing to provide medical record releases, medical provider information, and proof of ownership of mineral leases. *Id.* at 8–9.

"When," as here, "an insurer asserts a noncooperation defense, the insured will likely be held to have forfeited his or her right to recover under an insurance policy when, in violation of a policy provision, the insured fails to cooperate with the insurer in some material and substantial respect and this failure to cooperate materially and substantially disadvantaged the insurer." *Soicher v. State Farm Mut. Auto. Ins. Co.*, 351 P.3d 559, 564 (Colo. App. 2015). But "[t]o

5

alleviate some of the uncertainty around noncooperation defenses, the [Colorado] legislature

passed H.B. 20-1290, which enacted section 10-3-1118 and created rules for insurers asserting

noncooperation." *Wenzell v. United Servs. Auto. Ass'n*, 552 P.3d 1121, 1126–27 (Colo. App.

Apr. 18, 2024) (citing Colo. Rev. Stat. § 10-3-1118), *cert. granted in part,* No. 24SC372, 2025

WL 764614 (Colo. Mar. 10, 2025). That statute provides:

> (1) To plead or prove a failure-to-cooperate defense in an action concerning an insurance policy providing first-party benefits or coverage, each of the following conditions must be met before the defense is asserted in a court of law . . . :
>
>> (a) The insurer has submitted a written request to the insured or the insured's representative for the information the insurer seeks via:
>>
>>> (I) Electronic means if the insured or the insured's representative has consented to receive electronic documents from the insurer; or
>>>
>>> (II) Certified mail;
>>
>> (b) The information is not available to the insurer without the assistance of the insured;
>>
>> (c) The written request provides the insured sixty days to respond;
>>
>> (d) The written request is for information a reasonable person would determine the insurer needs to adjust the claim filed by the insured or to prevent fraud; and
>>
>> (e) The insurer gives the insured an opportunity to cure, which must:
>>
>>> (I) Include the furnishing of written notice to the insured of the alleged failure to cooperate, describing with particularity the alleged failure, within sixty days after the alleged failure; and
>>>
>>> (II) Allow the insured sixty days after receipt of the written notice to cure the alleged failure to cooperate.

Colo. Rev. Stat. § 10-3-1118(1). In other words, it "*requires* insurers to take certain steps or

forfeit any later-asserted noncooperation litigation defense." *Sanchez-Bell v. CSAA Gen. Ins. Co.*,

No. 22-cv-01678-WJM-STV, 2024 WL 2817504, at *2 (D. Colo. June 3, 2024). "The insurer

must clearly identify perceived deficiencies, so the insured is given notice — and a deadline —

to provide what is needed to evaluate a claim or risk its denial." *Wenzell*, 552 P.3d at 1129.

6

"[S]trict compliance with" the statute's "provisions is required" to avoid forfeiting a noncooperation defense, whether labeled as such or as a "condition precedent." *Id.* at 1128–29.

The defendant did not meet that requirement. The only letter to which it points to try to demonstrate compliance is its July 28, 2022 letter. But, to begin, that letter was sent electronically, not via certified mail as the statute requires. *See* ECF No. 56-3 at 3; Colo. Rev. Stat. § 10-3-1118(1)(a). On its face, the letter requests confirmation that the electronic communication was sufficient, which could cure that defect, *see* Colo. Rev. Stat. § 10-3-1118(1)(a)(I), and also indicates that a copy via certified mail is forthcoming, but the defendant provides no proof that either alternative came to pass.

Moreover, the letter's only mention of a deadline to respond, *see* section 10-3-1118(c), is when it specifically requests information about CDOT's involvement in this case, ECF No. 56-3 at 2–3, not about the cooperation failures of which the defendant now complains. *See* ECF No. 56 at 8–9. It notes, for instance, that the defendant is "asking for all documents exchanges during the litigation so [it] can better understand CDOT's involvement" and gives the plaintiff "sixty days . . . to provide the requested documents." ECF No. 56-3 at 3. Elsewhere in the letter, the defendant does say that it requested medical record releases and medical provider information multiple times to no avail. *Id.* at 1–2. But the last such request it references was from May 13, 2022, which means that the letter did not come "within sixty days after the alleged failure." Colo. Rev. Stat. § 10-3-1118(1)(e)(I). Nor does it mention a sixty-day deadline with which the plaintiffs must comply. *See id.* § 10-3-1118(1)(e)(II). The letter never mentions mineral leases at all. *See* ECF No. 56-3 at 1–4. That falls short of strict compliance.

Nor does the defendant contend otherwise. Instead, the defendant characterizes *Wenzell* as non-binding, urging the Court to ignore it in favor of earlier federal decisions that neglected

7

the statute. *See* ECF No. 56 at 9–10. But when "a state's high court has not explicitly decided the issue, the district court must 'attempt to predict what the state's highest court would do[,]' . . . [by] seek[ing] guidance from decisions rendered by lower courts in the relevant state." *Reeves v. Enter. Prods. Partners, LP*, 17 F.4th 1008, 1012 (10th Cir. 2021) (quoting *Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 666 (10th Cir. 2007)). As such, "*Wenzell* is a better predictor of how the Colorado Supreme Court would interpret and apply the recently codified provisions of Section 1118 than decisions from this District." *Sanchez-Bell*, 2024 WL 2817504, at *3; *see Worley v. State Farm Mut. Auto. Ins. Co.*, No. 1:23-CV-00337-DDD-MDB, 2025 WL 580493, at *5 n.5 (D. Colo. Feb. 6, 2025). So it is here: the defendant's argument that the plaintiffs failed to cooperate and failed to comply with conditions precedent to recovery is precluded by its failure to comply with section 10-3-1118's requirements.

The defendant pivots. In this case, it says, compliance with section 10-3-1118 would have been impossible prior to suit because some of the non-cooperation involved a medical provider list whose incomplete nature did not become apparent until litigation. ECF No. 56 at 10. But even if it is "correct that it would not have been possible for it to comply with section 10-3-1118," it "is incorrect . . . that this means that section 10-3-1118 is inapplicable to this case." *Worley*, 2025 WL 580493, at *6. The Colorado legislature decided that an insurance company cannot plead or prove a failure-to-cooperate defense until it has provided a "written request . . . for information a reasonable person would determine the insurer needs to adjust the claim filed by the insured or to prevent fraud." *See* Colo. Rev. Stat. § 10-3-1118(1)(d). The statute requires strict compliance. *Wenzell*, 552 P.3d at 1128-29. That may mean that insurance companies will occasionally be barred from immediately pursuing such a defense at the outset of a case, but the statutory language is clear and, as such, the remedy is with the legislature, not the Court, to

8

change the outcome. *See Worley*, 2025 WL 580493, at *6; *see also Wenzell*, 552 P.3d at 1129

("If an insurer wishes to assert that an insured is not entitled to insurance benefits because of a

failure to cooperate, then the insurer must with section 10-3-1118's procedural requirements

before it may raise this defense."). Nor does this leave the defendant utterly helpless: nothing

prevents it from referencing a failure to follow its policy requirements — that is, its contract with

the plaintiffs — to defend against the plaintiffs' claims that it acted unreasonably. *Prairie Walk

Condo. Ass'n v. Am. Ins. Co.*, No. 1:22-CV-00870-DDD-KAS, 2025 WL 1721674, at *4 (D.

Colo. June 13, 2025). It simply precludes the defendant's current bid to bar all of the plaintiff's

claims prior to trial.

## II.    Bad-Faith Claims

The defendant next asserts entitlement to summary judgment on the plaintiffs' common-

law and statutory bad faith claims. ECF No. 56 at 11–17. But its arguments largely ignore its

own burden and the actual evidence that the plaintiffs use to support these claims.

"Colorado recognizes both statutory and common law claims for bad faith breach of

insurance contracts." *Quillin v. State Farm Mut. Auto. Ins. Co.*, No. 1:18-CV-01166-JLK, 2019

WL 4640768, at *6 (D. Colo. July 11, 2019). The statutory version relies on Colorado's

requirement that an insurer "shall not unreasonably delay or deny payment of a claim for benefits

owed to or on behalf of any first-party claimant." Colo. Rev. Stat. § 10-3-1115(1)(a). Such a

claimant can "recover reasonable attorney fees and court costs and two times the covered

benefit." *Id.* § 10-3-1116(1). "[A]n insurer's delay or denial was unreasonable if the insurer

delayed or denied authorizing payment of a covered benefit without a reasonable basis for that

action." *Id.* § 10-3-1115(2). A statutory bad-faith claim therefore hinges on whether an "insurer

. . . unreasonably delay[ed] or den[ied] paying a covered benefit without a reasonable basis for

doing so." *State Farm Mut. Auto. Ins. Co. v. Fisher*, 418 P.3d 501, 506 (Colo. 2018), and must

establish that "(1) the insurer delayed or denied payment of benefits to the insured, and (2) the

delay or denial was without a reasonable basis" to succeed. *Ayala v. State Farm Mut. Auto. Ins.*

*Co.*, 628 F. Supp. 3d 1075, 1081 (D. Colo. 2022) (citing *Am. Family Mut. Ins. Co. v. Barriga*,

418 P.3d 1181, 1185–86 (Colo. 2018)).

A common law bad faith claim requires that "an insured . . . prove that (1) the insurer

acted unreasonably under the circumstances, and (2) the insurer either knowingly or recklessly

disregarded the validity of the insured's claim." *Sanderson v. Am. Fam. Mut. Ins. Co.*, 251 P.3d

1213, 1217 (Colo. App. 2010). This, compared with a statutory bad-faith claim, demands a

"heightened" showing because it requires not only a showing of unreasonableness, but also

"requires the insured to [demonstrate] . . . that the insurer knowingly or recklessly disregarded

the validity of the insured's claim." *Butman Fam. Inv. Ltd. P'ship v. Owners Ins. Co.*, No. 19-cv-

01638-KLM, 2020 WL 1470801, at *8 (D. Colo. Mar. 25, 2020) (citing *Fisher v. State Farm*

*Mut. Auto. Ins. Co.*, 419 P.3d 985, 990 (Colo. App. 2015), *aff'd*, 418 P.3d 501 (Colo. 2018)).

Reasonableness, then, is at the core of each claim. Unsurprisingly, reasonableness "is

ordinarily a question of fact for the jury." *Vaccaro v. Am. Family Ins. Grp.*, 275 P.3d 750, 759

(Colo. App. 2012). "However, in appropriate circumstances, as when there are no genuine issues

of material fact, reasonableness may be decided as a matter of law." *Id.*

The defendant has not shown that this case falls into the latter bucket. For one thing, its

argument primarily consists of bare averments that its conduct was reasonable and that the

plaintiffs cannot show otherwise. ECF No. 56 at 13, 14. That will not do. A party seeking

summary judgment must cite specific evidence in the record supporting their contentions that the

plaintiffs cannot genuinely dispute particular facts. *See* Fed. R. Civ. P. 56(a); *Arabalo v. City of*

*Denver*, No. 11-CV-02343-MSK-MEH, 2013 WL 10871817, at *9 n.9 (D. Colo. Aug. 26, 2013), *aff'd*, 625 F. App'x 851 (10th Cir. 2015). The defendant does not do so. Its election instead simply to insist that the plaintiffs cannot support their claims "largely foist[s] off the burden of identifying the relevant facts onto [the plaintiffs]." *Arabalo*, 2013 WL 10871817, at *9 n.9. When the defendant has "had a full opportunity to conduct discovery in this action" and is "fully apprised of . . . the relevant facts," there is little justification for that attempted burden-shifting. *See id.*

The defendant's abbreviated assertions pose an additional problem. The "[d]efendant here had the initial burden in the [motion for summary judgment] of either (1) providing evidence that [it] complied with industry standards applicable to the facts of this case, or (2) pointing out that [the p]laintiff lacked evidence of an objective industry standard applicable to the facts of this case showing that [it] acted unreasonably." *Jewell v. State Farm Mut. Auto. Ins. Co.*, No. 18-cv-02536-KLM, 2020 WL 1627348, at *5 (D. Colo. Feb. 26, 2020)); *see Montoya v. Allstate Ins. Co.*, No. 14-CV-02943-LTB-KMT, 2016 WL 192274, at *4 (D. Colo. Jan. 15, 2016). That is because "[t]he reasonableness of the insurer's conduct is determined objectively and is 'based on proof of industry standards." *Schultz v. GEICO Cas. Co.*, 429 P.3d 844, 847 (Colo. 2018) (quoting *Goodson v. Am. Standard Ins. Co. of Wis.*, 89 P.3d 409, 415 (Colo. 2004)). Thus, "[t]ypically, in cases like this, the parties employ experts to opine whether . . . conduct aligns with industry standards." *Ridgeview Ctr. LLC v. Canopius US Ins. Inc.*, No. 18-cv-02850-REB-MEH, 2019 WL 2137394, at *4 (D. Colo. May 16, 2019). But the defendant points to no such opinion or any such standard, expecting instead that its bare averment that its conduct was reasonable will carry the day. That provides no evidence of the relevant standard, let alone the defendant's compliance with it or the plaintiff's lack of evidence of conformance with it.

11

At oral argument, the defendant suggested for the first time that *Townsend v. Northwestern Mutual Life Insurance Co.*, No. 20-CV-02809-KLM, 2022 WL 602869 (D. Colo. Feb. 28, 2022), excuses it from this obligation. The assertion is problematic. For one thing, the defendant's motion and reply never mentioned *Townsend*, *see* ECF Nos. 56, 69, and "[a]rguments raised for the first time at oral argument before the magistrate judge . . . are waived." *Four Winds Interactive LLC v. 22 Miles, Inc.*, No. 16-CV-00704-MSK-STV, 2017 WL 4334074, at *5 n.3 (D. Colo. Mar. 28, 2017) (citing *Gocha v. Nat'l R.R. Passenger Corp.*, 75 F. Supp. 3d 1304, 1313 (D. Colo. 2014)). For another, *Townsend* relied on its finding that "there [was] no underlying coverage" due to unrebutted evidence of the insured having lied about drug use on his original application to hold that "a bad faith claim [could not] lie." 2022 WL 602869, at *15. It does not say that an insurer can leave a court to guess at industry standards and then find that it complied with such hypothetical standards as a matter of law.

In all events, the plaintiffs do point to potentially unreasonable conduct of the defendant in its investigation of the claim: for example, the defendant did not take, but could have taken a recorded statement from Dr. Knight to clarify her medical treatment claim. ECF No. 62 at 18. This supports a conclusion that a jury could find in favor of the plaintiffs on their bad-faith claims. *Quillin*, 2019 WL 4640768, at *7. Their expert also suggests the defendant's decision not to toll the statute of limitations foreclosed its ability to gather more information. ECF No. 56-2 at 59; *see Cody v. Am. Fam. Mut. Ins. Co.*, No. 23-CV-03107-STV, 2025 WL 2996632, at *7 (D. Colo. Oct. 23, 2025). After all, "bad faith is not limited to a decision to deny a claim; rather, bad faith can occur in the unreasonable refusal to investigate a claim or to gather facts." *Brodeur v. Am. Home Assur. Co.*, 169 P.3d 139, 147 n.7 (Colo. 2007).

Nevertheless, the defendant says, any such theory is factually unsupported. ECF No. 56 at 12. But, again, the defendant bears the "burden to 'show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Gardner v. State Farm Mut. Auto. Ins. Co.*, 639 F. Supp. 3d 1158, 1164 (D. Colo. 2022) (quoting Fed. R. Civ. P. 56(a)). And its failure to try to carry that burden with specific citations to evidence and argumentation dooms its bid to preclude the plaintiffs' claims as a matter of law.

Nor do *Zarevo v. State Farm Mut. Auto. Ins. Co.*, No. 22-CV-00117-RMR-NYW, 2022 WL 1061910 (D. Colo. Apr. 8, 2022), *report and recommendation adopted*, 2022 WL 3099205 (D. Colo. June 15, 2022), and *Vansky v. State Farm Auto. Ins. Co.*, No. 20-CV-01062-PAB-NRN, 2022 WL 900160 (D. Colo. Mar. 28, 2022), change that conclusion. This case is not, for instance, a motion to dismiss a complaint that did not identify any observations or opinions by the plaintiff's providers that the defendant disregarded. *Zarevo*, 2022 WL 1061910, at *3, 6. And while the defendant relies on *Vansky*, 2022 WL 900160, at *7, to put a burden on the plaintiffs to "identif[y] what further investigation could or would have uncovered," even assuming that is true, the plaintiffs have adduced evidence on that point. The plaintiffs' evidence shows, for example, that the defendant recognized prior to this action's filing that Dr. Knight's medical and loss of opportunities claims were "unusual," but failed to follow up with the loss of opportunities claim until after this action was commenced. ECF No. 62 at 18; ECF No. 56-2 at 20–21. Additionally, the plaintiffs' expert opines that additional follow-up on the defendant's part could have made a difference regarding, for instance, the defendant's assessment as to apportionment of liability between it and CDOT. *Id.* at 54–55. Such expert opinions and evidence pave the way for a jury potentially to find in the plaintiffs' favor. *See, e.g.*, *Worley*, 2025 WL 580493, at *5.

The defendant has a final shot in its sling. This case, it says, is nothing more than a dispute over the value it assigned to the plaintiff's claim and, as such, its conduct cannot be deemed unreasonable. ECF No. 69 at 10

That is too rose-colored a view. For one thing, while "the insurer must be afforded wide latitude in its ability to investigate claims and to resist false or unfounded efforts to obtain funds not available under the contract of insurance," *Garcia v. State Farm Mut. Auto. Ins. Co.*, No. 19-CV-00860-JLK, 2020 WL 1627346, at \*2 (D. Colo. Jan. 17, 2020) (quoting *Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1274 (Colo. 1985)), it cannot "avoid liability for unjustified denials of benefits simply by framing each denial as a valuation dispute." *Vaccaro*, 275 P.3d at 760. True, "every lawsuit over insurance coverage is a valuation dispute to the extent that the parties disagree about how much should be paid under a policy, or whether the policy provides for coverage at all," *id.*, but an insurer "cannot simply escape liability for unjustified denials simply by framing the issue as a valuation dispute." *Garcia*, 2020 WL 1627346, at \*2. It follows, then, that while "a genuine difference of opinion over the value of an insurance claim weighs against a finding of bad faith," *Vaccaro*, 275 P.3d at 760, "a valuation dispute does not per se insulate an insurer from liability for bad faith." *Gardner*, 639 F. Supp. 3d at 1165; *see also Vaccaro*, 275 P.3d at 760 ("If every such claim is 'fairly debatable' as a matter of law, the exception would swallow the rule, and insurers could refuse to pay any claim where money is at issue."). Simply characterizing the claim as a value dispute alone, then, does not warrant summary judgment.

And here, the plaintiffs' assertions are not limited to a dispute over value. They assert, for example, that the defendant "failed or did not thoroughly review the medical records," amounting to a bad-faith rejection of whole portions of Dr. Knight's medical claim. ECF No. 5 at ¶ 126. Indeed, after each time the plaintiffs provided supplemental medical records to the

14

defendant, the defendant did not change its settlement offer, instead only continuing to demand

additional information. ECF No. 56-2 at 20–23. There may be reasons that such conduct was

reasonable, but that is for a jury to decide, not the Court, especially in the absence of specific

evidence cited by the defendant demonstrating that reasonableness. *See Gardner*, 639 F. Supp.

3d at 1165 (citing *Vaccaro*, 275 P.3d at 759).

Of course, the plaintiffs' common law bad faith claim has a further requirement that "the

insurer knowingly or recklessly disregarded the validity of the insured's claim." *See Jewell*, 2020

WL 1627348, at *4. Nevertheless, "in the absence of evidence of an applicable industry standard

(or lack thereof)," such as that occasioned by the defendant's decision not to elucidate any such

standards here, "the Court cannot find at this time that the failure to review such records was not

'knowing and reckless,' as is additionally required for the common law bad faith claim." *Id.* at

*7. A court cannot simply guess at relevant industry standards, and it is difficult to say as a

matter of law that the defendant did not knowingly or recklessly violate such standards,

especially when the only evidence of them comes from the plaintiffs' expert. *See id.*; *see also*

*Gardner*, 639 F. Supp. 3d at 1166 (denying summary judgment on common law bad faith claim

because, among other things, the defendant "presented no evidence of applicable industry

standards establishing the reasonableness of its conduct, nor does it argue that [the plaintiff]

cannot present evidence of applicable industry standards"). Accordingly, the defendant is not

entitled to summary judgment on the plaintiff's common-law bad-faith claim.

**CONCLUSION**

For the foregoing reasons, the Court RECOMMENDS[2] that the defendant's Motion for

Summary Judgment, ECF No. 56, be **DENIED**.

DATED this 25th day of February, 2026, at Denver, Colorado.

BY THE COURT:

_____

Cyrus Y. Chung
United States Magistrate Judge

---

[2] Be advised that all parties shall have fourteen days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive, or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676–83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen days after being served with a copy may bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted or adopted by the District Court. *Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)). Finally, all parties must consult and comply with the District Judge's practice standards for any specific requirements concerning the filing and briefing of objections.