**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:23-cv-00007-JLK

**CONSTANCE KNIGHT AND ROGER KNIGHT**

Plaintiffs,

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY**

Defendant.

---

**PLAINTIFFS' RESPONSE TO DEFENDANT'S OBJECTION TO RECOMMENDATION (DKT. 76)**

---

Plaintiffs Constance and Roger Knight, by and through undersigned counsel submits their *Response to Defendant's Objection to Recommendation* (DKT. 76) as follows.

## INTRODUCTION:

Constance Knight ("Dr. Knight") was injured in a car crash on December 8, 2018. After recovering underlying tort benefits, Dr. Knight made a UIM benefits claim with Defendant for additional compensation. Dr. Knight filed this lawsuit on December 9, 2022. After extensive litigation and discovery, Defendant filed several motions which were fully briefed in September 2024, most of which were recently resolved by Magistrate Chung after a hearing on February 20, 2026. The only remaining motion to be resolved is the Motion for Summary Judgment ("Motion") (Dkt. 54) which Magistrate Chung recommended be denied on February 25, 2026. Dkt. 75. For the reasons stated below, Magistrate Chung properly recommended that the Motion be denied and

Defendant has not identified any errors of law or facts in its Objection which necessitate overruling the Magistrate's Recommendation. The Magistrate's Recommendation, accordingly, should be adopted in full.

## LEGAL STANDARD:

When a party objects to a magistrate judge's recommendation, the district court "must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review." *United States v. 2121 E. 30th St*., 73 F.3d 1057, 1060 (10th Cir. 1996); see also Fed. R. Civ. P. 72(b)(2) (permitting a party to raise "specific written objections to the proposed findings and recommendations"). Such specific objections permit "the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *2121 E. 30th St*., 73 F.3d at 1059 (quotation omitted).

In the absence of a proper objection, the district court may review a magistrate judge's recommendation under any standard it deems appropriate. See *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991); see also *Thomas v. Arn*, 474 U.S. 140, 150, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985) ("It does not appear that Congress intended to require district court review of a [magistrate judge's] factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings.")

## ARGUMENT:

### I. The Magistrate Judge Correctly Interpreted the Failure to Cooperate Statute and Properly Recommended the Affirmative Defense be Denied

Defendant's first objection is to the Magistrate's interpretation of C.R.S. § 10-3-1118. *See* Def. Obj., pg. 2. The Magistrate correctly interpreted C.R.S. § 10-3-1118 and held that Defendant did not meet the strict requirements of the statute in proving its failure to cooperate defense. *See* Recc., at 1. C.R.S. § 10-3-1118 provides, in pertinent part, that

> (1) To plead or prove a failure-to-cooperate defense in an action concerning an insurance policy providing first-party benefits or coverage, **each** of the following conditions must be met before the defense is asserted in a court of law or an arbitration:
>
> (a) The insurer has submitted a written request to the insured or the insured's representative for the information the insurer seeks via:
>
> > (I) Electronic means if the insured or the insured's representative has consented to receive electronic documents from the insurer; or
> >
> > (II) Certified mail;
>
> (b) The information is not available to the insurer without the assistance of the insured;
>
> (c) The written request provides the insured sixty days to respond;
>
> (d) The written request is for information a reasonable person would determine the insurer needs to adjust the claim filed by the insured or to prevent fraud; and
>
> (e) The insurer gives the insured an opportunity to cure, which must:
>
> > (I) Include the furnishing of written notice to the insured of the alleged failure to cooperate, describing with particularity the alleged failure, within sixty days after the alleged failure; and
> >
> > (II) Allow the insured sixty days after receipt of the written notice to cure the alleged failure to cooperate.
>
> C.R.S. § 10-3-1118 (emphasis added)

Additionally, the Colorado Court of Appeals noted that section 10-3-1118 "applies to litigation commencing on or after September 14, 2020." *Wenzell v. United Servs. Auto. Ass'n.*, 2024 COA 40, ¶ 31, 552 P.3d 1121; accord *Sanchez-Bell v. CSAA Gen. Ins. Co*., no. 22-cv-1678-

WJM-STV, 2024 U.S. Dist. LEXIS 98294, 2024 WL 2817504 at ** 2-3 (D. Colo. June 3, 2024) (adopting the *Wenzell* analysis of the new statute as the Colorado courts' interpretation of the Colorado statute). The *Wenzell* Court also concluded "that the plain language and purpose of section 10-3-1118 indicate that strict compliance with its provisions is required." *Wenzell* at ¶ 47. *If an insurer fails to meet the requirements of that provision, then it cannot raise noncooperation as a defense*. Id. at ¶ 39 (emphasis added); see also *Cosby v. GEICO Gen. Ins. Co*., 2024 U.S. Dist. LEXIS 111906, *10-12. Defendant has not met the requirements of the statute, and thus, Magistrate Chung correctly held that it cannot proceed with a noncooperation defense as a total bar to recovery of benefits in this case.

Defendant contends it should get the benefit of the noncooperation defense without demonstrating it strictly complied with the statute. Defendant attempts an end-run around the strict compliance requirements in C.R.S. § 10-3-1118 by pointing to post-litigation conduct in discovery. It is undisputed the first time Defendant even attempted to comply with C.R.S. § 10-3-1118 was on July 28, 2022, when it sent a letter laying out information it needed and identified a deadline. *See* Dkt. 75, pg. 4. Plaintiff complied with said letter. Prior to that letter, and afterward, Defendant provides no evidence it otherwise met the strict compliance requirement under the statute.

Moreover, Defendant does not even argue that Plaintiffs failed to comply with its requests stated in the letter. The undisputed evidence shows that Dr. Knight communicated with Defendant throughout the claim and provided it with medical records and other information, and as a result, Defendant evaluated the claim at $8,616.42. *Id.* at pg. 3; ECF No. 62-3 at 1. In fact, Plaintiffs complied and provided a response to the letter of July 28, 2022, the same day it was sent and provided releases and other information requested. Dkt. 75 at 3-4. Defendant asks that the District

Court disregard the Magistrate's findings that it never complied with the noncooperation statute and reward it with the benefit of dismissal of *all* Plaintiffs' claims. But Defendant failed to show that it complied strictly with the statute's terms, and thus, it should not receive the benefit of the affirmative defense. *Wenzell* at ¶ 47.

Defendant argues that even though it did not comply with each requirement under C.R.S. § 10-3-1118, the parties' duties under F.R.C.P. 26 somehow count as notice under the statute to allow it to claim noncooperation. Dkt. 76 at 3. Defendant does not provide support for its conclusion that a strict compliance statute which requires (1) sending a written letter through certified mail, (2) identifying specific information reasonable to adjust the claim and (3) providing a deadline to submit that information (as well as an opportunity to cure) is the same as duties imposed on litigants through F.R.C.P. 26. *Id.* Defendant argues that its actions in sending written discovery are the same as requesting information consistent with the requirements of C.R.S. § 10-3-1118. Dkt. 76 at 3. That conclusion is found nowhere in the statute's plain text, or in any case law Defendant cites, and is, nevertheless, inaccurate.

Defendant argues generally that Plaintiffs failed to cooperate. In support, it states it sent Plaintiffs letters after litigation commenced that comply with the statute. Dkt. 76 at 3. Defendant does not identify which letters it is talking about. The only letter that appears to even reference C.R.S. § 10-3-1118 is one sent on July 28, 2022, which Plaintiff immediately responded to and complied with by providing authorization for releases and information regarding Plaintiffs' claim with CDOT. Prior to that letter, Dr. Knight provided Defendant with her medical records and prior medical records at Defendant's request in response to her initial demand letters in pre-litigation. Plaintiffs cooperated throughout pre-litigation and discovery and provided releases and medical

authorizations. For example, Dr. Knight executed an additional eleven releases and disclosed them in her initial disclosures on May 24, 2023. The releases Dr. Knight executed and provided to Defendant almost three years ago at the beginning of litigation ranged from authorizations to access her Social Security records and Medicare records; to releases that authorized Defendant to access any prior workers' compensation claims, view her records with Colorado's prescription drug monitoring program, access the IRS to pull her tax returns, and even contact her prior attorney's office regarding this claim. Plaintiffs made themselves available for deposition and Dr. Knight also attended two IMEs. Despite obtaining these releases and receiving additional medical records and bills, Defendant's evaluation of the claim never changed.

Next, Defendant argues that the Magistrate misinterpreted the timing provision under C.R.S. § 10-3-1118, but Defendant fails to identify where it sent any correspondence, other than the July 28, 2022 letter in pre-litigation, that attempted to comply with the timing requirement set forth in C.R.S. § 10-3-1118. Critically, the timing issue is not reached if Defendant failed to send correspondence that would trigger any deadline under C.R.S. § 10-3-1118. In other words, if Defendant cannot show it took the prerequisite action of sending correspondence compliant with C.R.S. § 10-3-1118, it should not be able to claim Plaintiffs missed any deadline under the statute and failed to comply. Indeed, other than the July 28, 2022, correspondence, Defendant does not provide any other evidence in the record or in its Objection where it served Plaintiffs written notice and time to cure as required by the statute. This lack of support is not enough to overcome the Magistrate's findings and recommendation. Lastly, even if Defendant's post-litigation conduct (e.g. sending discovery requests to Plaintiffs) triggered C.R.S. § 10-3-1118, Defendant does not identify where it notified Plaintiffs of any deficiencies, or where it provided Plaintiffs an

opportunity to cure, as required by C.R.S. § 10-3-1118. As an example, if Defendant felt the information was incomplete, Defendant could have requested a discovery dispute hearing to argue that Plaintiffs failed to cooperate with discovery, failed to respond to requests, or disclose material and relevant information.

Defendant also points out that the sixty-day requirement must run before "another letter" can be sent out. *Id.* Defendant appears to implicitly agree that an *initial* letter under C.R.S. § 10-3-1118 identifying deficiencies can be followed by a *subsequent* letter identifying other deficiencies. However, Defendant fails to identify where it followed its own interpretation of the statutory scheme. Therefore, Defendant has provided no legal or factual basis for the District Court to overrule the Magistrate's findings under *de novo* review. Lastly, Defendant argues that it "complied with the FTC statute" because "letters requesting the information were sent both pre- and post-litigation that described with particularity the information needed and the policy language indicating the failure". Dkt. 76 at 3. Defendant does not identify or cite to the record to which letters it is referring.

Defendant next argues that *Wenzell* is not binding on this case because it is on appeal. *Id.* However, Defendant does not address Magistrate Chung's analysis of the *Reeves* case (17 F.4th 1008, 1012 (10th Cir. 2021)) which directs a federal court to consider decisions rendered by lower courts if the state's highest court has not addressed the issue directly. Dkt. 75, pg. 8. Defendant acknowledges that *Wenzell* was decided by the Colorado Court of Appeals, but disputes that the case is binding here, solely because *Wenzell* is on appeal. Dkt. 76 at 3-4. However, Defendant does not provide a basis for why *Reeves* is nonetheless controlling or should not be applied. As Magistrate Chung stated in his Recommendation, under *Reeves*, the *Wenzell* holding is binding

until the Colorado Supreme Court renders a final decision that speaks on the issue directly. *Reeves*, 17 F.4th 1008, 1012.

Defendant's final argument regarding the failure to cooperate defense is that it is "severely prejudiced" by being "forced to incur the expense of litigating this matter through trial." Dkt. 76 at 4. Defendant cites *Hall v. Allstate* for the proposition that successfully proving a failure to cooperate defense is a bar to all plaintiffs' claims. Dkt. 76, at 4; *Hall v. Allstate Fire & Cas. Co.*, 20 F.4th 319, 1325 (10th Cir. 2021). Defendant once again does not describe how it strictly complied with C.R.S. § 10-3-1118. A noncooperation affirmative defense is an extremely strong defense because it defeats all Plaintiffs' claims arising under an insurance policy; Defendants should not benefit from such a defense if they cannot show they have met the strict requirements under C.R.S. § 10-3-1118. Indeed, it was not until July 28, 2022, that Defendant attempted to invoke C.R.S. § 10-3-1118. And it is undisputed Plaintiff immediately complied with its request for information and responded to that correspondence. Prior to that time, Defendant consented to Plaintiff providing all records and bills.

Lastly, Defendant does not apply *Hall* to this case, likely because *Hall* is factually distinguishable. In *Hall*, Allstate was able to identify several instances of noncooperation that are simply not present in this case. *See Hall*, 20 F.4th 319 at 1325. For example, it was uncontroverted in that case that Mr. Hall ignored several calls and letters from Allstate over the course of several months. *Hall*, 20 F.4th 319 at 1323-24. Rather than respond to the requests, Mr. Hall proceeded to file suit against Allstate. *Id.* The *Hall* court held that this prevented Allstate from investigating the claim. *Id.*

Facts like those in *Hall* are not present here. Defendant may argue that Plaintiffs' disclosures were "incomplete" but never asserts that Plaintiffs completely ignored its requests, like Mr. Hall completely ignored Allstate's requests. Dkt 76. As stated in the preceding section, even if Defendants believed discovery requests were the same as written notice under C.R.S. § 10-3-1118, Defendant never asked for a discovery dispute to raise these issues and claim Plaintiffs failed to cooperate. As stated in Magistrate Chung's Recommendation, it is undisputed in this case that Plaintiffs and Defendant were engaged in over two years of back and forth regarding medical records, wage loss information, and releases in pre-litigation. Dkt. 75, at 3-4. Defendant identified no evidence in its original briefing, or now in its objection, which supports Plaintiffs ignored them. Nor has Defendant shown how any of the alleged noncooperation prejudiced it or prevented it from performing a reasonable investigation; as stated in the undisputed facts section of the Recommendation, Defendant made Plaintiffs an offer based on the information presented (and then never changed their evaluation despite receiving additional information they requested). Dkt. 75 at 3-5. Thus, Defendant's Objection should be overruled and the noncooperation defense denied per Magistrate Chung's Recommendation.

## II. The Magistrate Properly Concluded the Dismissal of Statutory Bad Faith Claims and Common Law Bad Faith Claims Should Be Denied

Defendant next objects to the latter conclusions in the Magistrate's Recommendation regarding the statutory and common law bad faith claims. Defendant states that the Magistrate "[C]onfuses the claims being made and the burdens of proof." Dkt. 76 at 4. To bolster its position, Defendant cites the *Peterson* case with respect to burdens of proof and the summary judgment standards. *Id. Peterson* states in relevant part:

> The moving party bears the initial burden of demonstrating an absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. *Id*. In attempting to meet this standard, a movant who does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claims; rather, the movant need simply point the court to a lack of evidence for the other party on an essential element of that party's claim. *Adler v. Wal-Mart Stores, Inc*., 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

*See Peterson v. USAA Life Ins. Co*., 353 F. Supp. 3d 1099, 1105. Defendant is correct that ultimately, at trial, Plaintiffs bear the burden of proving their claims (not affirmative defenses). However, this case is at the summary judgment stage. Defendant is the moving party. Defendant bears the burden as the moving party in a motion for summary judgment, and the Magistrate properly concluded the Defendant did not demonstrate an absence of a genuine dispute of material fact. Dkt. 76 at 4. There is no confusion of any legal standard or misapplication of law by the Magistrate in this regard.

Defendant also states in the Objection that the burden shifted back to Plaintiffs to show record evidence that disputed facts existed. However, it is not clear that Defendant overcame its burden to show a triable issue of fact never existed with respect to Plaintiffs' bad faith claims. Regardless, even if Defendant has shifted the summary judgment burden back to Plaintiffs, Plaintiffs have shown in their briefing that there are several disputes of material fact that exist, which should allow the claims to proceed to trial. For example, the Magistrate cites numerous facts raised by Plaintiffs in their briefing which demonstrate that even if the burden is shifted back, triable issues of fact exist. Dkt. 75 at 10-12. Ultimately, whether the disputed material facts raised in the briefing show Defendant's conduct is reasonable or not is a question for the jury to decide.

Defendant nevertheless contends that several facts in the Recommendation reflect that it followed "industry standards" and, consequently, that summary judgment on the statutory bad faith claim is warranted. Dkt. 76, at 5.

> As indicated in *Dale v. Guaranty National Insurance Co.*, the issue of whether an insurer has acted reasonably is an objective one, based upon evidence of industry standards. *Goodson v. Am. Standard Ins. Co*., supra. **The unfair practices listed in § 10-3-1104(1)(h) do not establish a standard of care actionable in tort, but they may be used as evidence of industry standards.** *Am. Family Mut. Ins. Co. v. Allen*, 102 P.3d 333 (Colo. 2004). Several of those practices could implicate conduct occurring after litigation has begun, such as not attempting in good faith to effectuate a prompt, fair, and equitable settlement once liability has become reasonably clear, § 10-3-1104(1)(h)(VI), C.R.S. 2006; attempting to settle a claim for less than a reasonable amount based upon the insurance application, § 10-3-1104(1)(h)(VIII), C.R.S. 2006; or raising certain defenses or offsets in third-party claims, § 10-3-1104(1)(h)(XV), C.R.S. 2006.
>
> *Parsons v. Allstate Ins. Co*., 165 P.3d 809, 817.

Defendant's Objection lists several of Plaintiffs' allegations which touch on standards listed in § 10-3-1104(1)(h). The Magistrate also lists these facts in his Recommendation at Dkt 75 at 12. For example, the Magistrate notes that Plaintiffs have identified that Defendant failed to undertake certain reasonable steps in its investigation. *Id.* Thus, Defendant has not shown that Plaintiffs' claims for statutory bad faith do not reference industry standards. As stated in *Adler*, the movant need simply point the court to a *lack of evidence* for the other party on an essential element of that party's claim. *Adler v. Wal-Mart Stores, Inc*., 144 F.3d 664, 671 (10th Cir. 1998) (emphasis added). Here, Defendant cannot point out a lack of evidence presented by the Plaintiffs. Instead, Defendant argues whether the evidence presented is enough to prove her bad faith claim (i.e., what weight should be put on certain evidence, not whether certain evidence exists). For example, Defendant states:

> The Recommendation cited plaintiffs' allegation that additional follow up by State Farm could have made a difference as to its assessment of the apportionment of liability between

> Dr. Knight and CDOT. However, what the Recommendation does not address is that there was never any impact on State Farm's liability determination pre or post-suit as it only asserted that defendant 'did not follow up' on the loss of opportunity claim without saying why not following up was material.

Dkt. 76, at 6.

This statement demonstrates that there is a genuine dispute of fact regarding whether Defendant's conduct was reasonable or not. Indeed, whether Defendant's lack of follow up in investigating Plaintiffs' claim is unreasonable and amounts to statutory bad faith is a question for the jury. In other words, Defendant is not disputing the fact that they failed to follow up on certain aspects of the claim; Defendant appears to dispute whether Plaintiffs can argue that lack of follow up was material or not to bad faith. Dkt. 76 at 6. Indeed, Courts have held such conduct is relevant to a statutory bad faith claim. Colo. Rev. Stat. § 10-3-1113(4) addresses what constitutes reasonable conduct by an insurer:

> In determining whether an insurer's delay or denial was reasonable, the jury may be instructed that willful conduct of the kind set forth in section 10-3-1104(1)(h)(I) to (1)(h)(XIV) is prohibited and may be considered if the delay or denial and the claimed injury, damage, or loss was caused by or contributed to by such prohibited conduct.

Colo. Rev. Stat. § 10-3-1104(1)(h) proscribes a variety of unfair claim settlement practices. For example, insurers may not refuse claims *without conducting a reasonable investigation*, id. § 10-3-1104(1)(h)(IV) or fail to promptly provide a reasonable explanation for a denied claim or a settlement offer, id. § 10-3-1104(1)(h)(XIV); *Etherton v. Owners Ins. Co.,* 829 F.3d 1209, 1225 (emphasis added). The Magistrate found that facts Plaintiffs identified in the briefing were relevant to Defendant's conduct and to industry standards like those articulated in Colo. Rev. Stat. § 10-3-1104(1)(h). Therefore, Plaintiffs have made a threshold showing that the fact is in dispute. Similarly, a jury should decide other issues Defendant raises, like whether Defendant's choice to

not take a recorded statement from either of the Plaintiffs is unreasonable, or whether offering to toll the statute of limitations was unreasonable considering the circumstances at the time, etc. Defendant is free to argue that those actions were not taken because they would not have affected the adjustment of the claim. However, those facts are relevant to Plaintiffs' claims because they go to whether Defendant's conduct was that of "a reasonable insurer" and/or whether it recklessly disregarded or knew its conduct was unreasonable.

Moreover, Defendant also refers to the fact that Plaintiffs allege it did not follow up on the loss of opportunity claim until after litigation commenced. Dkt. 76 at 5. Plaintiffs' allegation is that Defendant did not comply with an industry standard because it took no action until litigation regarding the loss of opportunity claim. Plaintiffs also allege that, even during the litigation after receiving new information, Defendant's evaluation of the loss of opportunity claim never changed, which violates an industry standard. The tort of bad faith breach of an insurance contract encompasses *an entire course of conduct and is cumulative. Dale v. Guar. Nat'l Ins. Co*., 948 P.2d 545, 551-552, see *Savio,* 706 P.2d at 1268; *Southerland v. Argonaut Ins.* Co., 794 P.2d 1102, 1106 (Colo. App. 1990) (emphasis added). In fact, Defendant seemingly hasn't changed its evaluation despite a plethora of information obtained through discovery and the numerous releases Plaintiffs provided to it, before and after litigation. Such alleged conduct in failing to follow up is relevant and goes to the heart of Plaintiffs' bad faith claim. Moreover, Defendant's post-litigation conduct is relevant to the common law bad faith claims. *Id.* That conduct, even performed in a post-litigation context, is relevant to Plaintiffs' bad faith claims and is a material disputed fact. *Id.* The duty of good faith continues as long as the insurer-insured relationship exists. *Bucholtz v. Safeco Ins. Co*., 773 P.2d 590 (Colo. App. 1988). Defendant clearly disputes that this was unreasonable,

but this again demonstrates that the parties have a genuine dispute of a material fact, and the Magistrate correctly recommended against summary judgment with respect to the bad faith claims.

Defendant makes a reference to common law bad faith at Dkt. 76, pg. 6 and recites the *Concrete Works* case regarding the summary judgment standard, among other cases including *Atain Specialty Ins. Co.* Dkt. 76 at 6. Plaintiffs are unclear as to Defendant's point regarding the common law bad faith claim because Defendant does not provide further analysis after the citation. Dkt. 76 at 6-7. To the extent that Defendant's Objection can be read here as Defendant arguing that the facts cited by the Magistrate in the Recommendation amount to mere "attorney argument", or that the facts are not material for purposes of summary judgment, these points have already been addressed in other sections of this brief and by the Magistrate's recitation of material undisputed and disputed facts. For example, the Magistrate referenced ECF No. 62 at 18; ECF No. 65-2 at 20-21 which refers to correspondence from the handling adjuster regarding her intention to perform further investigation (which Plaintiffs allege does not reasonably occur). Dkt. 75 at 13.

Defendant's final argument appears to be a rehashing of arguments raised in its briefing and oral argument. Defendant once again characterizes Plaintiffs' case as a value dispute. Dkt. 76 at 7. This argument is a trial argument and has no weight or bearing on summary judgment without further support. Defendant does not show why this Court should disregard facts which are in dispute and deemed by the Magistrate as material. Defendant's characterization of the case is not supported by record citations which controvert the facts Plaintiffs presented in the briefing. Nor does Defendant identify a misapplication of law or fact by the Magistrate here, as required by F.R.C.P. 72. Plaintiffs' claims should not be dismissed where Plaintiffs have identified several genuine disputes of material facts in the record. Moreover, the District Court should adopt the

Magistrate's Recommendation in full because Defendant has not met its burden to prove that Plaintiffs failed to cooperate or that summary judgment is warranted.

## CONCLUSION

**WHEREFORE**, for the reasons stated above, Plaintiffs respectfully request that Defendant's Objections be overruled. Plaintiffs request that the District Court adopt the Magistrate's Recommendation (Dkt. 75) in full.

**DATED:** March 25, 2026

Respectfully submitted,

*/s/Nicholas D. Stofa*
Brianne N. Falgien, Esq. #40903
Vinod K. Iyer, Esq. #43917
Nicholas D. Stofa, Esq. #56457
Falgien Warr & Iyer, P.C.
4251 Kipling Street, Suite 525
Wheat Ridge, CO 80033
Telephone: (303) 731-4790
Fax: 720-619-4895
Email: viyer@fwilegal.com
Email: bfalgien@fwilegal.com
Email: nstofa@fwilegal.com
*Attorneys for Plaintiff*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on March 25, 2026, I served a true and accurate copy of the foregoing **Response to Defendants Objection to the Magistrate's Recommendation** upon all parties through the court's ECF system as follows:

Heather A. Salg
SGR, LLC
3900 East Mexico Avenue, Suite 700
Denver, CO 80210
Phone: 303-320-0509
Fax: 303-320-0210
Email: hsalg@sgrllc.com
*Attorney for Defendant State Farm Mutual Automobile Insurance Company*

*<u>/s/Nicholas D. Stofa</u>*
Nicholas D. Stofa